BRIGHTON MILLS, INC., FORMERLY SOUTHERN BRIGHTON MILLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8633. Promulgated September 20, 1946.

820

*John C. Reid, Esq.*, for the petitioner.
*D. D. Smith, Esq.*, for the respondent.

OPINION.

HARRON, *Judge*: The facts have been stipulated. The stipulation of facts is incorporated herein and is adopted as our findings of fact.

The facts necessary to understand the question can be stated briefly as follows: Petitioner, a Georgia corporation, was a processor of cotton during 1935. It kept its books and reported its income on the accrual basis. Petitioner paid processing taxes for cotton processed under the Agricultural Adjustment Act of 1933, during one month only in 1935, the month of January. Thereafter, it did not pay any processing taxes due, but only accrued such taxes on its books for the months after January. During 1935 there was pending before the Supreme Court the litigation over the constitutionality of the above act, which is referred to hereinafter as the A. A. A.

During part of 1935, while the litigation was pending, petitioner entered into contracts with its customers, which contracts were stamped on petitioner's purchase orders and invoices, providing in general, that "If and when" the A. A. A. processing taxes should be invalidated by a final decision of the Supreme Court, the seller [petitioner] would credit on the buyer's account the amount of any tax which, by reason of such invalidity, should be refunded to the seller, or the seller should be relieved from paying, with respect to any portion of the contract as to which title had passed within 120 days prior to such determination of invalidity. The agreement provided, also, that "In any settlement hereunder, seller shall be entitled to deduct on a *pro rata* basis reasonable expenses of procuring any such refund or relief."

Petitioner did not set up any account on its books relating to the above agreements to credit buyers' accounts for processing taxes refunded or not paid by the seller. The selling prices for goods sold by petitioner did not allocate any part of the contract price to processing taxes.

The taxing provisions of the A. A. A. were held unconstitutional on January 6, 1936, by the Supreme Court. During January and February 1936 petitioner paid $84,865.65 to its vendees [customers] under the above agreements, such refunds being made on the sales made by petitioner in 1935.

After January 6, 1936, petitioner closed its books for 1935. It then made, in 1936, closing entries, as of December 31, 1935, accruing $84,865.65 for refunds due customers.

In the petition, the petitioner alleges that the respondent erred in failing to allow "as a deduction in computing taxable income or as an adjustment in the selling price of goods or in the cost of goods sold, that portion of unpaid Agricultural Adjustment Act taxes which the petitioner was under obligation to pay either the United States or its own customers."

On brief, petitioner contends that its "1935 income was properly reduced by the amount of refunds made to its customers." Petitioner relies solely on the holding made by the Board of Tax Appeals (now the Tax Court of the United States) in *Sanford Cotton Mills*, 42 B. T. A. 190 (which was promulgated in June 1940). Petitioner makes slight reference to the recent decision of the Supreme Court, *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281, only by way of arguing that this case can be distinguished on account of the agreements which petitioner made during part of 1935 with its customers; whereas, in *Security Flour Mills Co.*, *supra*, the taxpayer voluntarily made refunds to customers on account of processing taxes which were passed on to them in the prices charged. Also, petitioner does not make any argument, whatever, on the point of its liability in 1935 under the agreements with its customers. Petitioner appears to recognize, however, that such liability was, in 1935 when the agreements were made, contingent upon the future decision of the Supreme Court on the question of the constitutionality of the taxing provisions of the A. A. A.

The facts in this case are substantially the same as in *Sanford Cotton Mills, supra*.[1] In this case, as in the above case, "By contracts

---

[1] In *Cartex Mills, Inc.*, 42 B. T. A. 894, the *Sanford Mills* case was followed. Prior to the decision in *Sanford Mills*, the Bureau of Internal Revenue had ruled that refunds by processors of processing taxes to customers under the type of contract involved in the *Sanford* case could not properly be deducted from the processors' 1935 gross income. I. T. 3143, 1937-2 C. B. 216. After the *Sanford* case was decided the Bureau announced its nonacquiescence therein, stating that the decision was a departure from the strict rule that a contingent liability, which is dependent on the last day of the accounting period upon a future event, is not a deductible accrued liability for such accounting period. See G. C. M. 22404, 1940-2 C. B. 204. Nevertheless, the Bureau stated further that the decision in the *Sanford* case would be accepted *"as to the result."* By I. T. 3430, the Bureau revoked its former ruling expressed in I. T. 3143, *supra*. See 1940-2 C. B. 205. If this, therefore, were the present state of the law, petitioner would seem to be entitled to the deduction claimed here under the Bureau's ruling stated above, which appears to be in effect still. Petitioner relies on G. C. M. 22404 and I. T. 3430.

with its vendees it [the vendor] was to readjust its sale prices by relieving the vendee of so much as represented the passing on of processing tax if and when the processing tax was held invalid." See page 191 of the report in the *Sanford Mills* case.

It is clear that the Supreme Court has ruled in *Security Flour Mills Co., supra*, that it was an error of law for the Board of Tax Appeals to depart from "the strict rule that a contingent liability, which is dependent on the last day of the accounting period upon a future event, is not a deductible accrued liability for the taxable year." G. C. M. 22404, *supra*. See *Stanard-Tilton Milling Co.*, 3 T. C. 1026, 1029; *Commissioner* v. *Blaine, Mackay, Lee Co.*, 141 Fed. (2d) 201; *Louisville Provision Co.* v. *Commissioner*, 155 Fed. (2d) 505. The Supreme Court, in the *Security Flour Mills* case, reaffirmed the view expressed in *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516, where it said:

It has long been held that, in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid.

The Board of Tax Appeals held in *Security Flour Mills Co.*, 45 B. T. A. 671, that reimbursements made in 1937 to vendees of $45,865.90 with respect to 1935 sales were deductible from the taxpayer's income for 1935. This holding was made on the authority of *Cannon Valley Milling Co.*, 44 B. T. A. 763; affd., 129 Fed. (2d) 642. The opinion of the Board of Tax Appeals in *Cannon Valley Milling Co.*, *supra*, at page 769, referred to but did not discuss *Sanford Cotton Mills*, *supra*.

The decision of the Circuit Court in *Commissioner* v. *Security Flour Mills*, 135 Fed. (2d) 165, reversing the Board of Tax Appeals, held that:

* * * there is no basis for the conclusion that the deductions must be related back [to 1935] in order to clearly reflect the income and deductions, and to prevent distortion of income, within the meaning of the statute [sec. 43, Internal Revenue Code].

The Supreme Court, in affirming the Circuit Court, had more to say about section 43, and said as follows (321 U. S. 281):

From these reports it is clear that the purpose of inserting the qualifying clause was to take care of fixed liabilities payable in fixed installments over a series of years. For example, a tenant would not be compelled to accrue, in the first year of a lease, the rental liability covering the entire term nor would he be permitted, if he saw fit to pay all the rent in advance, to deduct the whole payment as an expense of the current year. But we think it was not intended to upset the well understood and consistently applied doctrine that cash receipts or matured accounts due on the one hand, and cash payments or accrued definite obligations on the other, should not be taken out of the annual accounting system and, for the benefit of the Government or the taxpayer, treated on a basis which is neither a cash basis nor an accrual basis, because so to do would, in a given instance, work a supposedly more equitable result to the Government or to the taxpayer.

We can not perceive any real distinction between the facts of this case and the facts in *Security Flour Mills*, in view of the broad scope of the *rationale* of the Supreme Court. There is some difference in the facts, but the narrow question is whether, in the face of the identity in certain facts, the rule of *Security Flour Mills* shall not be applied to this case.

The identity of the facts is that "the petitioner, in figuring its costs and its sales price to consumers, added the amount of the processing tax, but it collected its purchase price as such and designated no part of it as representing tax. The petitioner received the purchase price as such." (The quotation is from the Supreme Court decision in *Security Flour Mills Co., supra*). From the facts which have been stipulated in this case, we understand that this petitioner, in stating the contract prices on its invoices of goods sold, did not show the processing tax as a separate item. We understand, further, that under the agreements here in question, which were stamped on the invoices,[2] a "settlement" was contemplated, if a refund should be made to customers under which the seller was to be "entitled to deduct on a *pro rata* basis reasonable expenses of procuring any such refund or relief." The agreement thus contemplated the making of adjustments after the A. A. A. taxes were held invalid, if that event occurred.

The facts in this case which differ from the facts in *Security Flour Mills* are that here the refunds involved in the deduction which is being claimed were made in January and February of 1936, and at that time the closing entries of the accounts for 1935 had not yet been made. The situation was about the same in *Sanford Cotton Mills, supra*, although there the refunds were made later, during the first seven months of 1936. In *Security Flour Mills, supra*, there were no "Charlotte Agreements," the taxpayer claimed and was allowed deductions from 1935 income of the processing taxes it had paid, the credits for processing taxes returned in 1936 were credited to a reserve in 1936, and the customer refunds which the taxpayer sought to carry back to 1935, and deduct in that year, totaling $45,-865.90, were refunded to customers during the three years, 1936, 1937, and 1938. The returns for 1936 and 1938 were not introduced in evidence. In *Security Flour Mills* there was not the narrow question which is presented here. Here, as in *Sanford Cotton Mills, supra*, the taxpayer was in the situation of adjusting its accruals shortly after the end of the year 1935, when, on January 6, 1936, the doubt about the validity of the A. A. A. processing tax was removed. See *Sanford Cotton Mills, supra*, p. 191.

---

[2] The agreements were the same as quoted in *Cartex Mills, Inc.*, 42 B. T. A. 894, 895, known as the "Charlotte Agreement."

The crux of the problem is found in the reason for any proposed carry-back to 1935, whether it be done by making adjustments in closing entries for the year 1935, as here, or by filing amended income tax returns, or otherwise. In all cases relating to customer refunds which are occasioned by the decision that the A. A. A. taxes were invalid, there is a crucial date, January 6, 1936. In every case where a taxpayer's year for reporting income ended prior to January 6, 1936, the situation must be the same as in this case. Here, the taxpayer's liability to make customer refunds under its "Charlotte Agreements" was contingent as to liability and uncertain as to amount until January 6, 1936. When the A. A. A. taxes were held to be invalid in January 1936, petitioner's liability to make the refunds became fixed; until then the liability was only contingent. The fact that the obligation to pay became "final and definite in amount" is the reason for the proposal to carry the deduction back to 1935. This is more than merely adjusting closing entries. The question here turns upon the above stated fact. Decision of the question can not be swayed one way or the other by another rule of law which requires that the total amounts received from sales of products in 1935 constituted gross income for 1935. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *Moundridge Milling Co.* v. *Cream of Wheat Corporation*, 105 Fed. (2d) 366. See the holding made by the Board of Tax Appeals in *Security Flour Mills Co.*, *supra*, at page 679. The agreement which petitioner had with its customers is set forth below.[3] A distinction should be noted between an agreement to adjust prices on "any uninvoiced portion of this contract" and credits to the buyer's account of some amount by reason of a refund to the seller of taxes or relief to the seller from paying any tax.

On December 31, 1935, petitioner did not have any accrued liability on its books for customer refunds in any amount, as far as the stipulated facts show; and the fact is that it did not have any accruals on its books for the sum which is involved here, $84,865.65. Under its agreements, petitioner was to credit customers' accounts with some

---

[3] If and when, for any reason, seller's liability for processing taxes levied under the Agricultural Adjustment Act, as heretofore and hereafter amended, is increased, decreased, or terminated, or such taxes shall be invalidated by final decision of the Supreme Court of the United States, prices on any uninvoiced portion of this contract are subject to adjustment at a rate computed on the basis of the conversion factors set up by the Treasury Decision 4433, approved May 10, 1934.

In addition, the seller will credit on the buyer's account the amount, computed on the basis of such conversion factors of any such tax, which, by reason of such invalidity, shall have been refunded to the seller or seller shall have been relieved from paying with respect to any portion of this contract as to which title has passed within 120 days prior to such determination of invalidity. The title shall be deemed to have passed when goods are invoiced. No such credit shall be allowed hereunder in respect of any portion of this contract upon which a direct refund from the Government on floor stock is recoverable by the buyer or any subsequent holder.

In any settlement hereunder, seller shall be entitled to deduct on a pro rata basis reasonable expenses of procuring any such refund or relief.

amount for any tax which should be refunded to petitioner or which petitioner might not have to pay, by reason of invalidity of the A. A. A. taxes. It has been stipulated that petitioner "refunded" $84,865.65 to its customers in 1936, in January and February. Whether such "refund" was made by cash payments to customers, or by credits to their accounts on petitioner's books, is not in the record. But, we make this point with reference to the problem of "clearly reflecting the income" of the taxpayer in any year. While it may seem severe to apply the rule of *Security Flour Mills* to this case, the severity diminishes when consideration is given to the computations of income in a year after 1935, when credits to customers' accounts or cash refunds will offset gross income of the year in which the credits or refunds are made. Furthermore, at the end of 1935 it was not even certain that petitioner would ever have to refund any amount to its customers representing taxes collected as part of the sales price on sales arising in 1935. For petitioner's contracts with its customers provided for reimbursing the vendee only with respect to amounts representing processing taxes on goods sold within 120 days prior to the invalidation of the Agricultural Adjustment Act by the Supreme Court. If the decision of the Supreme Court in the *Butler* case invalidating the act had been rendered on June 6, 1936, instead of January 6, 1936, petitioner not only would have had no obligation to pay the taxes to the Government, but also would have had no obligation under its contracts to repay any amount to its vendees on sales made in 1935. Hence, petitioner's liability for paying out any amount on 1935 sales either to the Government as taxes or to its customers as refunds was uncertain and contingent on December 31, 1935.

We must take the view here that the question must be decided by the date of the final determination of petitioner's obligation to make credits or refunds to customers, which is January 6, 1936. On that date the liability really accrued. *Dixie Pine Products Co., supra.* The petitioner's liability to make credits or refunds to customers depended upon its liability to pay the A. A. A. taxes; and petitioner had to await the event of the Supreme Court litigation, and might claim a deduction on account of credits or refunds to customers only when and after its liability or nonliability for the A. A. A. taxes was determined.

It is held that petitioner, on the accrual basis, is not entitled to deduct from its 1935 gross income, the sum of $84,865.65 which was "refunded" to customers in 1936, under the *rationale* of the Supreme Court in the *Security Flour Mills* case, wherein the Supreme Court took the view that it was not the purpose of the Congress in enacting section 43 of the Internal Revenue Code "to substitute * * * a divided and inconsistent method of accounting not properly to be denominated

either a cash or an accrual system." Respondent's determination is sustained.

*Sanford Cotton Mills, supra,* was decided by this Court prior to the Supreme Court's decision in *Security Flour Mills Co.* v. *Commissioner, supra.* It is inconsistent with the reasoning in that opinion and must be overruled.

It is unnecessary to consider another question which is presented in view of the holding made under the main question.

Reviewed by the Court.

*Decision will be entered for the respondent.*