THE BALTIMORE TRANSFER COMPANY OF BALTIMORE CITY, PETI-
TIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9947.   Promulgated January 3, 1947.

*Morton J. Hollander, Esq.*, for the petitioner.
*George J. LeBlanc, Esq.*, for the respondent.

### OPINION.

HILL, *Judge*: Respondent determined deficiencies in petitioner's in-
come tax and excess profits tax liabilities for the calendar year 1943 in
the respective amounts of $4,260.03 and $347.31.   Only a portion of
the deficiencies is in controversy.   The sole question presented is
whether petitioner is entitled to deduct an amount accrued by it in
the taxable year as due to the Maryland Unemployment Compensa-
tion Fund, which amount was subsequently paid but was refunded to
petitioner in 1944.   The facts are stipulated and are so found.

Petitioner is a Maryland corporation organized in 1892 and having
its principal place of business at Baltimore, Maryland.   It keeps its
books and files its Federal income tax and excess profits tax returns
on an accrual basis.

On or about July 27, 1943, the Maryland Unemployment Compen-
sation Board, hereinafter referred to as the Board, mailed a notice
to petitioner reading as follows:

The 1943 session of the Maryland Legislature amended the Maryland Unem-
ployment Compensation Law to include a provision for experience rating for

**1**

contributions payable to the Maryland Unemployment Compensation Fund on wages paid with respect to employment after June 30, 1943.

Section 7 (c) (3) of this Act provides that:

"No employer's rate shall be less than 2.7% per cent for any fiscal year if his total annual payroll in the calendar year immediately preceding such fiscal year exceeded 150 per cent of his total payroll in the calendar year 1940".

However, your contributions rate for the period July 1, 1943 to June 30, 1944 will continue at 2.7% because:

Your total annual payroll for 1942 exceeded 150% of your total payroll for the calendar year 1940.

MARYLAND UNEMPLOYMENT COMPENSATION BOARD

By [Signed]   WM. I. WALSH
*Chief Accountant.*

Pursuant to that letter petitioner, in October 1943, paid to the Maryland Unemployment Compensation Fund, hereinafter referred to as the fund, $5,345.60 for the first quarter of the fiscal period and at the end of 1943 accrued $5,401.91 for the second quarter of the fiscal period. On its income and excess profits tax returns for the calendar year 1943, which were filed on March 15, 1944, petitioner deducted these amounts.

The minutes of the Board for January 13, 1944, disclose the following:

Ex parte hearings were held at a meeting today in the office of the Chairman of the Board in the O'Sullivan Building.

The Chairman presented an opinion by the Special Assistant Attorney General Albert A. Levin, that "* * * I am of the opinion that if the same interests own or control the enterprises in question, then employment experience should be combined for the purposes of rate contributions."

\*          \*          \*          \*          \*          \*          \*

MARYLAND UNEMPLOYMENT COMPENSATION BOARD
January 13, 1944.

S. C. CROMWELL
Secretary.

The opinion referred to in the minutes was rendered to the Board by the Special Assistant Attorney General in the form of a letter as follows:

Mr. RUSSELL S. DAVIS, *Chairman,*
Unemployment Compensation Board
O'Sullivan Building
Baltimore 2, Maryland

Dear Mr DAVIS: You have inquired whether the Board may join employers for purposes of merit rating.

I have examined Chapter 435 of the Acts of 1943 (codified as subsection 7 (c) of Article 95-A of the Annotated Code of Maryland, (1943 Supp.), which introduced experience rating under certain conditions in the Unemployment Compensation Law and have reached the conclusion that the Board is fully justified in doing so.

In Chapter 435, supra, the Legislature defined the meaning of some of 'the terms used therein, but did not in any way change the definition of the term "employer" as found in Section 19 of the Unemployment Compensation Law.

The provisions in question read as follows:

Section 19 (f) " 'Employer' means":

(1) * * * with respect to the calendar year 1938 and any calendar year thereafter, any employing unit which in each of 20 different weeks within either the current or preceding calendar year (whether or not such weeks are or were consecutive) has or had in employment four or more individuals (not necessarily simultaneously and irrespective of whether the same individuals are or were employed in each such week) ;

(4) Any employing unit which, together with one or more other employing units, is owned or controlled (by legally enforceable means or otherwise) directly or indirectly by the same interests, or by husband and wife, or which owns or controls (by legally enforceable means or otherwise) one or more other employing units and which, if treated as a single unit with such other employing units or interests, or both, would be an employer under paragraph (1) of this subsection. A partnership shall, for the purpose of this subsection, be considered as under common control with another employing, unit if the partner or partners common to each employing unit do under the terms of written Articles of Partnership, or in fact own more than a 50% interest therein ;

I must, therefore, suppose that the Legislature was aware of the fact and regarded the definition as found in the section above referred to as applicable to employers for experience rating purposes.

In view thereof, I am of the opinion that if the same interests own or control the enterprises in question, their employment experience should be combined for the purposes of rate contributions.

Pertinent sections, other than those set forth above, of the Maryland Unemployment Compensation Law, including the amendments of 1943, article 95 A of the Annotated Code of Maryland (1943), are as follows:

**CONTRIBUTIONS**

*    *    *    *    *    *    *

7. (a) Payment.

(1) On and after January 1, 1936, contributions shall accrue and become payable by each employer * * * Such contributions shall become due and be paid by each employer to the Board for the fund in accordance with such regulation as the Board may prescribe, and shall not be deducted, in whole or in part, from the wages of individuals in his employ.

*    *    *    *    *    *    *

(1) The Board shall maintain an experience-rating record for each employer. * * *

All benefits paid to an individual shall be charged against the experience-rating record of his principal base-period employer (as defined in subsection (c) (7) of this Section).

(2) The standard rate of contribution payable by each employer shall be 2.7 per cent.

(3) No employer's rate shall be varied from 2.7 per cent for any fiscal year unless and until his experience-rating record has been chargeable with benefits throughout the 36-consecutive-calendar-month period ending on the computa-

tion date (as defined in sub-section (c) (7) of this Section), and unless and until each of his annual pay rolls, as defined herein, during the four calendar years immediately preceding the computation date for that fiscal year equals or exceeds $150.

No employer's rate shall be less than 2.7 per cent for any fiscal year if his total annual pay roll in the calendar year immediately preceding such fiscal year exceeded 150 per cent of his total pay roll in the calendar year 1940.

(4) The Board shall for the fiscal year beginning July 1, 1943, and for each fiscal year thereafter, determine the contribution rate of each employer who has met the requirements specified in sub-section (c) (3) of this Section, on the basis of his experience-rate record, in the following manner:

(i) The Board shall compute a benefit ratio for each such employer which shall be the quotient obtained by dividing the total benefits chargeable to his experience-rating record which were paid within the 36-consecutive-calendar-month period ending on the computation date by the total of his annual pay rolls for the three calendar years immediately preceding that computation date. Such benefit ratio shall be computed to the fourth decimal point, and shall be expressed as a percentage.

(ii) The contribution rate of each employer for whom a benefit ratio is computed shall be:

(A) 0.9 per cent if such benefit ratio is less than 0.5 per cent.

\* \* \* \* \* \* \*

(G) 2.7 per cent if such benefit ratio equals or exceeds 2. per cent.

\* \* \* \* \* \* \*

(6) No employer's rate shall be varied from the 2.7 per cent rate, for any fiscal year unless, as of the preceding March 31 the total amount available for benefits in the Maryland unemployment fund equals or exceeds $50,000,000.00 or 1.5% of the total pay rolls for the last five years or 6% of the total pay roll for the previous year, whichever is greatest.

\* \* \* \* \* \* \*

(e) Interest on Past-Due Contributions.

Contributions unpaid on the date on which they are due and payable, as prescribed by the Board, shall bear interest at the rate of 1 per centum per month \* \* \*

(f) Collection by Suit.

If, after due notice, any employer defaults in any payment of contributions and interest, the amount due may be collected by civil action in the name of the State, and the employer adjudged in default shall pay the costs of such action. Civil actions brought under this Section to collect contributions and interest from an employer shall be heard by the court at the earliest possible date and shall be entitled to preference upon the calendar of the court over all other civil actions except \* \* \* The Board may proceed in the collection of contributions in the manner prescribed by \* \* \* Article 81 of the Annotated Code of Maryland (1939 Edition).

\* \* \* \* \* \* \*

(i) Forfeiture of Corporate Charter.

The provisions of Article 81, Sections 152 and 153 of the Annotated Code of Maryland (1939 Edition) shall apply to nonpayment of unemployment compensation contributions or interest.

\* \* \* \* \* \* \*

On or about April 21, 1944, the Board notified petitioner that it had combined its account with that of its affiliates and that for the fiscal

year ended June 30, 1944, its contributions rate was 0.9 per cent. This was the first notice petitioner received or could have received of the change in rate applicable to its contribution to the fund. This notice is as follows:

We sent you a notice of your contribution rate for the fiscal year July 1, 1943 to June 30, 1944. However, we have found on checking your account that this notice was sent to you in error, and we have combined your account with that of your affiliates:

Merchants Terminal Co_____ 441, 000
National Brewing Co_____ 477, 550
Pompeian Olive Oil Corp_____ 498, 300

and find total taxable wages reported for the years 1940, 1941 and 1942 amount to $5,287,742. Benefits charged to your accounts for the same years were $21,668.12, which gives you a benefit ratio of .409 and the minimum rate of .9 per cent for the above mentioned fiscal year.

Very truly yours,

MARYLAND UNEMPLOYMENT COMPENSATION BOARD

By [Signed]   W. WALSH, *Chief Accountant.*

The information of the Board as to the names of the affiliates of petitioner was contained in the files of the Board on certain reports filed with the Board on February 25, 1937, on behalf of petitioner and on behalf of the Merchants Terminal Corporation, hereinafter referred to as Terminal, Baltimore, Maryland. These reports are designated "Report to Determine Liability under Maryland Unemployment Compensation Law." The report filed on behalf of petitioner shows that it is an affiliate of Terminal, which owns a majority of the capital stock of petitioner. The report filed on behalf of Terminal shows it to be affiliated through stock ownership in petitioner, Pompeian Olive Oil Co. and the National Brewing Co.

When this proceeding was heard on June 3, 1946, the Bethlehem Steel Co. was contesting with the Maryland Unemployment Compensation Board the latter's right to combine "affiliated or controlled employers" for the purpose of rate contributions.

The refund to petitioner because of the change of rate from 2.7 per cent to 0.9 per cent for the two quarters of the fiscal year was $7,165, which amount was credited to petitioner on or about May 15, 1944, and was reported as income by petitioner on its returns for the year 1944.

In determining the deficiencies here contested respondent disallowed as a deduction from petitioner's income for the calendar year 1943 the sum of $7,165, being the amount of the refund credit.

Many times we and the Circuit Court of Appeals have considered the general question which is presented here, that is, whether a taxpayer is entitled to deduct expenses or taxes paid or accrued in the taxable year, but later refunded, or liability for which is canceled. It once seemed that *E. B. Elliott Co.*, 45 B. T. A. 82, established the most

comprehensive rule for the solution of this vexatious problem and marked our attainment of a definite position with respect thereto. Subsequently, however, the Supreme Court, in deciding an allied question in *Security Flour Mills* v. *Commissioner*, 321 U. S. 281, laid down general principles which conflict with our remarks in the *Elliott* case.[1] In its opinion the Supreme Court quoted from *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, as follows:

> All the revenue acts which have been enacted since the adoption of the Sixteenth Amendment have uniformly assessed the tax on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period, either the calendar year, or, at the option of the taxpayer, the particular fiscal year which he may adopt.
> * * * It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation.

and went on to say:

> This legal principle has often been stated and applied. The uniform result has been denial both to government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount.

We think the application of these principles disposes of this proceeding in favor of the petitioner. In our view, its obligation to pay the full amount deducted was sufficiently certain at the close of the taxable year to justify its accrual, whereas the right to receive the refund credit became final, if at all, in the following year.

The Maryland Unemployment Compensation Board, pursuant to its delegated authority as a collecting agency of the state government, notified petitioner in July 1943 that for the current fiscal year it would owe 2.7 per cent of the wages paid to its employees. Petitioner accordingly accrued its quarterly liability at that rate. The amounts accrued were paid, apparently, shortly after the close of each quarterly accounting period. The total amount here involved was paid prior to the filing of petitioner's Federal tax returns for the calendar year 1943. Petitioner deducted these amounts on those returns.

It is apparent from the stipulated facts that petitioner neither denied nor questioned its liability for any portion of the accrued sums and had no reason prior to April 21, 1944, even to suspect that it might subsequently receive or be entitled to receive a refund or credit thereof. The Board was legislatively authorized to determine the contribution rate for each employer and petitioner had filed with it all the facts and information pertinent to that determination. Neither prior to nor at any time after the receipt of the July rate notification was there

---

[1] See discussion of judicial history in *Brighton Mills, Inc.*, 7 T. C. 819.

any question of the constitutionality of the controlling statute, its application to petitioner, or its imposition of an obligation upon it. It therefore seems reasonable and not at all surprising that all the indications are that petitioner accepted the administrative determination as correct and acted accordingly until April 1944, when it was notified that for rate purposes its account had been combined with that of its affiliates. The propriety of the accruals must be judged by the facts which petitioner knew or could reasonably be expected to know at the closing of its books for the taxable year, and under the circumstances here we think that the accruals must be regarded as proper. Cf. *Chestnut Securities Co.* v. *United States*, 62 Fed. Supp. 574; *Stanard-Tilton Milling Co.*, 3 T. C. 1026, 1029.

Contending otherwise, respondent says that petitioner's correct liability was ascertainable on December 31, 1943, since the Maryland statute was then in effect and all the operative facts were known. He urges that section 29.43–2 of Regulations 111 requires taxpayers to make every reasonable effort to ascertain the facts necessary to make a correct return and he argues that here "any inquiry or verification of its actual liability" would have revealed to petitioner the true amount of the obligations.

Though respondent's premise may be correct conceptually, we think his conclusion does not follow. In the first place, the argument ignores the practical compulsion and prima facie validity which we believe the business man may properly attribute to an administrative notification such as that first received by petitioner. It seems obvious to us that a proper accrual of such an obligation so asserted and which the taxpayer sees no reason to challenge is not conditioned upon his testing it judicially or by professional legal opinion. In this connection petitioner's position is quite different from that of the taxpayer in *Cooperstown Corporation* v. *Commissioner*, 144 Fed. (2d) 693, which voluntarily assessed itself with liability under a statute which for factual reasons peculiarly within its own knowledge did not impose upon it any liability whatsoever. Such a unilateral and possibly self-serving determination may conceivably be regarded as establishing only a liability contingent upon some indication of concurrence by the collecting authority, but obviously no similar degree of uncertainty can fairly be said to taint the accruals involved here.

There is a further reason why we can not approve the above stated argument of respondent. His theory seems to be that, where there is no change in pertinent law or facts after the end of the taxable year, the true liability and that only is accruable because as a matter of law it is *ascertainable*. This is logically equivalent to saying that if doubt as to correct liability hinges solely upon a question of law, the accrual must be made within the taxable year according to the ultimate

resolution of that question, since the determination awaited only a pronouncement by a legal expert.[2] Such a theoretical and totally unrealistic approach can not survive the application of the rationale of the *Security Flour Mills* decision and *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516, in each of which the Supreme Court clearly indicated that a controverted obligation is not accruable until the dispute is settled, even though the question is purely one of law. The disallowances of the deductions in those cases were not based on the fact that it was ultimately concluded that as a matter of law each taxpayer had no obligation and thus there was nothing to accrue. The determinative question in each of those proceedings was, as it is here, whether the accrual was proper under sound accounting principles. Cf. *Brighton Mills, Inc.*, 7 T. C. 819; *Sohio Corporation*, 7 T. C. 435; *Koppers Coal Co.*, 6 T. C. 1209, 1225; *Great Island Holding Corporation*, 5 T. C. 150, 159; *Atlantic Coast Line Railroad Co.*, 4 T. C. 140, 145.

Respondent also argues that it is now known that the accrual and deduction were erroneous to the extent of the refund and he contends, citing *Inland Products Co.* v. *Blair*, 31 Fed. (2d) 867, and other cases to similar effect, that he may correct the mistake retroactively by disallowing that portion of the deduction. We have stated above our conclusion that the accruals were proper on the basis of facts known at the close of the taxable year and it would seem to follow therefrom that as a matter of right petitioner is entitled to the deduction it took. Particularly pertinent in this respect is the following portion of the opinion in *United States* v. *Detroit Moulding Corporation*, 56 Fed. Supp. 754, 757, recently decided:

> Where, as here, in accrual accounting by calendar year periods for income tax purposes, all the events occur within a calendar year which fix the amount and the fact of a taxpayer's liability for an excise tax accrued though not paid, which liability is neither contested by the taxpayer nor contingent and not changed within a reasonable time after the close of the calendar year, proper accounting practice requires that such liability be accounted and deducted as accrued during such year, and, if such liability is lessened by unexpected events occurring in a subsequent year, after the income tax return has been filed, proper accounting practice requires that this be reflected by an entry in the subsequent year, crediting as income the amount by which the obligation has been so lessened, rather than by reopening and adjusting the taxpayer's books for the previous year. *United States* v. *Anderson*, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516, 64 S. Ct. 364; *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281, 64 S. Ct. 596; *Van Norman Co.* v. *Welch*, 1 Cir., 141 F. 2d. 99; Mertens Law of Fed. Income Taxation, Secs. 27.04, 27.12.

---

[2] A similar theory as to accrual of refund income was posed and rejected in *Electric Storage Battery Co.* v. *Rothensies*, 57 Fed. Supp. 731, 734; affd., 152 Fed. (2d) 521; reversed on another issue, 329 U. S. 296.

As taxpayer's method of accounting clearly reflected its income and it followed proper accounting practice in accruing the item in question in 1937, it follows that the item was properly deductible as accrued in 1937 * * *

Petitioner's right to the refund credit, if it ever existed, did not become final for accrual purposes prior to April 21, 1944. The fact that it received it does not in itself mean that from the moment it made the payment there was an immediate and definite right to receive it. *Electric Storage Battery Co.* v. *Rothensies, supra* (footnote 2), at p. 734. Changes in law and in official interpretation of law, particularly if not reasonably expectable, must, under the cases cited in the preceding quotation, be regarded as independent operative facts for accounting purposes. See also *Dougherty's Sons Inc.* v. *Commissioner*, 121 Fed. (2d) 700, 702, quoting from *Chicot County Drainage District* v. *Baxter State Bank*, 308 U. S. 371, 374.

The Supreme Court denied in the *Security Flour Mills* case that events occurring in a subsequent year may be seized upon as a basis for determining the allowable deductions of an earlier period. The aim of the taxing acts is to determine true income by annual periods, not true income "in the light of ultimate gain from a series of transactions over a period of years growing out of, or in some way related to an initial transaction in the taxable year." We accordingly believe that, in so far as the *Inland Products Co.* case approves the disallowance of deductions so as to reflect *ultimate* expenditure for a particular purpose rather than expenditure *of the taxable year*, it, like *E. B. Elliott Co., supra,* is of no standing today as authority. See *Brighton Mills, Inc., supra,* and *Standard-Tilton Milling Co., supra.*

One other point, though not necessary to our decision, should be mentioned. We do not share respondent's expressed optimism that "any inquiry" by petitioner would have revealed prior to December 31, 1943, its ultimate liability for 1943 contributions. Nor are we so convinced as respondent that the original accrual was erroneous. It is stipulated that at the time of our hearing of this case a Maryland corporation unaffiliated with petitioner was contesting with the Maryland Unemployment Compensation Board the latter's right to combine "affiliated or controlled employers" for the purpose of rate contributions. If the Board had no such right or duty, then indisputedly petitioner's original accrual represented its correct ultimate liability. Petitioner states in both its principal brief and its reply brief that on June 26, 1946, the Superior Court of Baltimore City, Maryland, Docket No. 1946, folio 333, held that the Board was not authorized by the statute to combine affiliated employers. Respondent has not disputed this statement. It seems, therefore, that, as the controlling statute is now interpreted by the Maryland courts, petitioner accrued the exact amount of its true liability. We know that petitioner

returned as 1944 income the amount of the refund credit and, while the propriety of the inclusion is not before us, it seems clear that all of petitioner's net income over the years will be taxed. The possibility that the Board may have already required, or will do so in the future, that petitioner sacrifice the refund credit or pay to the Unemployment Compensation Fund the amount thereof only emphasizes what we should think would be the administrative advantage to respondent of the treatment which we have determined is correct. It also seems to us that this procedure, and only it, will reflect petitioner's net income for each of the taxable years involved.

We hold that respondent erred in disallowing any portion of petitioner's deduction on its 1943 returns of the full amounts accrued by it as contributions payable to the Maryland Unemployment Compensation Fund for the period July 1 to December 31, 1943.

*Decision will be entered under Rule 50.*