RUBEN SIMON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MEYER SIMON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MORRIS SIMON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 13837, 13838, 13848.    Promulgated August 31, 1948.

*B. Dave Bushaw, Esq.*, for the petitioners.
*Philip J. Wolf, Esq.*, for the respondent.

OPINION.

HILL, *Judge*: The narrow issue for our consideration in this case is whether the execution by the petitioners of a conditional agreement made subsequent to the close of the partnership's fiscal year to refund a portion of the partnership income received during such fiscal year retroactively reduces the distributed income of the partnership for that year.

It is conceded that the partnership during its fiscal year ended October 31, 1943, was paid rent by the corporation in an amount equal to 6 per cent of the gross sales of the corporation during the period August 1, 1942, to July 31, 1943, in accordance with the terms of the lease of November 5, 1941. The record shows no facts to indicate that such rent was received by the partnership subject to any conditions or restrictions. Despite petitioners' contention, we find no evidence that at any time during such fiscal year of the partnership its members were under any present or future obligation to refund this income or any portion of it.

But on its tax return for the fiscal year ended October 31, 1943, filed on the cash receipts and disbursements basis, the partnership reported as rental income an amount equal only to 4¾ per cent of the gross sales of the corporation, and the individual returns of the partners likewise included only their respective distributive shares of this sum. The basis of such a discrepancy between the income actually received and that reported arises from the fact that subsequent to the close of the partnership's fiscal year and the corporation's fiscal year, but prior

to the filing of the partnership return, the partners refunded that amount of rent equal to the difference between 6 and 4¾ per cent of the corporation's gross sales. To accomplish this the credit of the partners on the corporate books was lowered and the corporate surplus was raised in an amount equal to the difference between the two percentages.

Such steps were taken as the result of a written agreement between the partners and the corporation on November 9, 1943, wherein it was provided that should the respondent disallow any portion of the deduction taken by the corporation for rental payments during the fiscal year from November 1, 1941, to October 31, 1942, as excessive, then the partners would refund to the corporation as of October 31, 1943, the excess portion of the rent received during the fiscal year ended October 31, 1943. On January 31, 1944, the respondent and the corporation's representatives agreed that rental payments made to the partnership during the fiscal year ended October 31, 1942, in excess of 4¾ per cent of gross sales were excessive. After this settlement the partners carried out their agreement of November 9, 1943, with the corporation regarding the rent received during the fiscal year ended October 31, 1943. The partnership's return for this period reflected the result of such action by reporting as rental income an amount equal to 4¾ per cent of the gross sales of the corporation.

Such an attempt to retroactively reduce the rental income actually received by the partnership during its fiscal year ended October 31, 1943, has no justification in tax law. It is contrary to the basic principles of the Federal income tax system as explained in *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, 363, 365:

All the revenue acts which have been enacted since the adoption of the Sixteenth Amendment have uniformly assessed the tax on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period, either the calendar year, or, at the option of the taxpayer, the particular fiscal year which he may adopt. * * *

* * * It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation. * * *

This fundamental doctrine was again recognized by the Supreme Court in *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281, 285–287, when it stated:

* * * But we think it was not intended to upset the well understood and consistently applied doctrine that cash receipts or matured accounts due on the one hand, and cash payments or accrued definite obligations on the other, should not be taken out of the annual accounting system * * *.

\* \* \* The uniform result has been denial both to government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount.

The decisions of the Tax Court are consistent with the accounting principles established by the Supreme Court in the above cases. See *Brighton Mills, Inc.*, 7 T. C. 819, and *Baltimore Transfer Co.*, 8 T. C. 1. Under such a system a subsequent refund of income which was received unconditionally during the taxable year may not reduce the true income to be reported where such a refund is agreed upon after the close of that year.

Counsel for petitioners does not attempt to challenge such a well established doctrine, but bases his case on the allegation that prior to the close of the partnership's fiscal year ended October 31, 1943, the partners made an oral agreement to refund any excess rent received from the corporation during that period. He contends that the agreement of November 9, 1943, between the partners and corporation merely reduced the terms of this oral understanding to writing. If this had occurred, it could well be argued that the rent received by the partnership during the fiscal year ended October 31, 1943, in excess of 4¾ per cent of the gross sales of the corporation did not constitute true income, but was a contingent payment based on a condition subsequent. Thus this sum need not have been reported in the partnership return when it was later refunded to the corporation. Such a view is supported by the Court's decision in *Eakins* v. *United States*, 36 Fed. (2d) 961. But we can find no evidence of any such oral agreement prior to the close of the fiscal year. Since the written agreement occurred subsequent to the close of the partnership's fiscal year, it can have no retroactive effect to reduce the partnership's rental income based on 6 per cent of gross sales of the corporation which was received during that year.

Other cases cited by the petitioners relate to situations where the taxpayer received advance payments during the taxable year and subsequent to the close of that year repaid them. It is true that such payments do not constitute true income, but these decisions are not controlling here. In the instant case there is no evidence to show that the rent received by the partnership in excess of an amount equal to 4¾ per cent of the corporation's gross sales was considered as an advance payment by either the partners or by the corporation.

Although partnerships, as such, are not taxed, that fact does not make inapplicable the rule regarding the determination of true income on the basis of fixed accounting periods. Section 187 of the Internal Revenue Code requires that "Every partnership shall make a return for each taxable year," and section 183 provides that the "net income of the partnership shall be computed in the same manner and on the

same basis as in the case of an individual." Thus the petitioners may not seize on events occurring after the close of the partnership fiscal year to alter the true income that must be reported by the partnership in its return.

The fact that there was in this case an agreement to make a refund of excess rent and an execution thereof prior to the filing of the partnership return can be of no significance in reporting the true income received during the partnership fiscal year previously ended. A partnership return must reflect only those events which occurred during the past fiscal year and must overlook any later events of which the partners became cognizant before the returns were filed. To decide otherwise would make it possible for partners to gain a downward adjustment of partnership income received in any year by merely delaying the filing of the partnership return until the occurrence of a subsequent favorable turn of events.

Therefore, in the instant case the partnership income for the fiscal year ended October 31, 1943, included rent in an amount equal to 6 per cent of the gross sales of the corporation. We hold that the partnership's return for such fiscal year should have reflected the receipt of this amount. It follows that each petitioner should have reported in his income and victory tax return for the calendar year 1943 an amount representing his distributive share of the net income actually received by the partnership during its fiscal year ended October 31, 1943, including rent based on 6 per cent of the corporation's gross sales. This is made plain by section 188 (a) of the code, which states that the amount of partnership income which must be included as income by a partner on his individual return in a case in which the accounting period of the partner differs from that of the partnership is his distributive share of the net income of the partnership for the accounting period of the partnership ending within the taxable year of the partner. See *J. H. Goadby Mills*, 3 B. T. A. 1245; *W. J. Woodruff*, 11 B. T. A. 477; *Jerome P. Burr*, 11 B. T. A. 1009.

The difference in the rent received by the partnership for its fiscal year ended October 31, 1943, when computed on a basis of 6 per cent of gross sales of the corporation instead of 4¾ per cent of the gross sales of the corporation, is $23,916.58. The proportionate amounts of this sum received by Ruben, Meyer, and Morris Simon during the calendar year 1943 were, respectively, $7,972.19, $7,972.19, and $7,972.20. The petitioners did not report this income on their returns for the taxable year ended December 31, 1943. The Commissioner made a proper adjustment of the income reported by each petitioner to reflect the addition of this omitted item. We conclude that the tax liability determined by the Commissioner as to each petitioner for the year 1943 is correct.

*Decisions will be entered for the respondent.*