Laramore, Judge,
delivered the opinion of the court:
This is a suit to recover alleged overpayments of income taxes for the years 1948 and 1950, to which plaintiff claims it is entitled as the result of a net operating loss for the year 1949.
The taxpayer, during all times material to this case, kept its books and records and filed its Federal tax returns on *221 the accrual method of accounting. In the years prior to 1946 it filed its Federal tax return on a fiscal year basis ending October 31. Since 1946, however, it has filed its Federal tax returns on the calendar year basis.
In 1949, taxpayer paid excess profits tax deficiencies imposed by subchapter E of chapter 2 of the Internal Eevenue Code of 1939 for the years 1941 through 1945. The net amounts of such deficiencies were as follows:
Taxable year ended October 31,1941_ $13,321.24
Taxable year ended October 31,1942_ 65,637.94
Taxable year ended October 31,1943_ 92,660.28
Taxable year ended October 31,1944_ 102,240.15
Taxable year ended October 31,1945_ 95,029.96
Period Oct. 31,1945 to Dec. 31,1945_ 31,335.62
Total-$400,225.19
In computing plaintiff’s tax liability for the year 1949, the Commissioner did not allow any part of the above-listed deficiencies as a deduction for that year. Since taxpayer is on the accrual method of accounting, any deduction to which it is entitled must be claimed for the year in which it accrued. United States v. Olympic Radio & Television, Inc., 349 U.S. 232. Defendant does not deny that the accruing of these deficiencies gives rise to a deduction, but contends that the deficiencies in this instance accrued in 1948. Hence, the defendant avers that an accrual-basis taxpayer may not deduct an expense in a year other than the one in which it accrued.
On the other hand, plaintiff contends that either the deficiencies accrued in 1949, in which event it is entitled to a deduction of the full amount for that year, or part of the deficiencies accrued in 1948 and part in 1949, but in either event the result would be substantially similar.
The primary question for our consideration is when did the liabilities accrue. We answer this question in the light of the facts and circumstances of the case.
In 1941 and 1942 taxpayer had income on which excess profits taxes were assessed. The plaintiff contested the amount of the assessments and brought suit in the Tax Court *222 on two counts.[1] Tbe opinion is reported at 8 T.C. 467. Plaintiff was unsuccessful in its efforts in the Tax Court on both counts, but appealed to the Court of Appeals for the Sixth Circuit. The Court of Appeals affirmed the Tax Court on one count and reversed that Court on the other count. Seiberling Rubber Co. v. Commissioner, 169 F. 2d 595. On mandate from the Court of Appeals the Tax Court computed plaintiff’s taxes for the fiscal years 1941 and 1942. The decision of the Court of Appeals also caused a reduction in plaintiff’s equity invested capital as reported on its returns for the fiscal years ending October 81,1948, 1944,1945 and the period October 81,1945, to December 31,1945, which resulted in determinations of deficiencies in excess profits taxes for those years. No petition for a writ of certiorari was filed with the Supreme Court by either party, the time for filing having expired on October 17, 1948. On November 24, 1948, the Tax Court entered its decision pursuant to the mandate of the Court of Appeals. On December 3,1948, the Tax Court, on its own motion, modified its decision of November 24,1948.
The examination of plaintiff’s tax liabilities for the years 1943, 1944, and 1945 was delayed pending the Tax Court’s decision for the years 1941 and 1942. This examination was conducted by a revenue agent and extended from about August 2,1948, until the latter part of December of that year. During this period, many additions to income were proposed by the agent and many deductions he proposed to disallow. The agent completed his examination and left a form 874, “Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment”, with plaintiff’s representatives. Plaintiff’s representatives did not agree to sign form 874, nor did they agree to accept the agent’s determinations. They told the agent that they would *223 wait until the final report was received and that the report would be submitted to plaintiff’s auditors before a decision would be made. Although the agent’s report was dated December 27, 1948, the final corrected copy was not mailed to plaintiff until February 15, 1949. However, on January 13, 1949, plaintiff signed form 874, accepting the deficiencies and overassessments for the years 1943, 1944, and 1945. It is the amount of the deficiencies, as determined by the Tax Court for the years 1941 and 1942, and as agreed upon by the waiver for the years 1943, 1944, and 1945, that the plaintiff alleges was illegally and erroneously disallowed as a deduction in the computation of its net operating loss for 1949. The Commissioner has recognized a net operating loss for that year to the extent of $627,252.51, which amount does not include any of the tax deficiencies discussed above.
The plaintiff was permitted to carry back $441,136.87 of its loss to 1947 which completely relieved plaintiff of any tax liability for that year and all taxes paid by plaintiff for that year were subsequently refunded. The difference between the net operating loss recognized by the Commissioner in 1949 and that allowed as a carry back to 1947 was applied against plaintiff’s income for 1948. As a result, the plaintiff’s tax liability was reduced to $123,464.50 and all amounts in excess of that figure paid by taxpayer for 1948 have been returned to it. Any additional deduction granted plaintiff for 1949 will increase its net operating loss for that year, which in turn will be carried back to further reduce plaintiff’s tax liabilities for 1948. If the full amount of the tax deficiencies is recognized as a liability for 1949, it will completely wipe out gross income for 1948 and leave a credit which may be carried over to 1950 and reduce plaintiff’s tax liability for that year. The deductions sought by plaintiff are provided for under pertinent provisions of the Internal Revenue Code of 1939.[2] The issue is whether plaintiff is entitled to the deductions sought.
Since the considerations which determine when the 1941 and 1942 deficiencies accrued are not identical with those *224 applicable to the 1943, 1944, and 1945 deficiencies, we shall discuss the two periods separately.
The 1941 and 1942 deficiencies accrued in the year the decision of the Tax Court became final. Commissioner v. Fifth Avenue Coach Lines, Inc., 281 F. 2d 556. Both parties regard this to be the law, but they disagree as to when the decision of the Tax Court became final. Section 1140 (c) (2) of the Internal Revenue Code of 1939 provides:
§ 1140. Date when Tax Court decision becomes final.
* % 3: * *
(c) Decision modified or reversed — * * *.
* * *
(2) Upon mandate of court of appeals.
If the decision of the Tax Court is modified or reversed by the court of appeals, and if (1) the time allowed for filing a petition for certiorari has expired and no such petition has been duly filed, or (2) the petition for certiorari has been denied, or (3) the decision of the court has been affirmed by the Supreme Court, then the decision of the Tax Court rendered in accordance with the mandate of the court of appeals shall become final on the expiration of 30 days from the time such decision of the Tax Court was rendered, unless within such 30 days either the Commissioner or the taxpayer has instituted proceedings to have such decision corrected so that it will accord with the mandate, in which event the decision of the Tax Court shall become final when so corrected.
The statute provides that the decision of the Tax Court becomes final 30 days from the time the decision was rendered. However, the statute recognizes an exception; i.e., when the Commissioner or the taxpayer has instituted proceedings to have such decisions corrected it shall become final when so corrected. Since this is the only exception provided for, it is reasonable to assume that it was the only exception intended. Neither the Commissioner nor the taxpayer instituted proceedings to correct the Tax Court’s decision of November 24,1948. We conclude from this that a correction initiated on the Court’s own motion will not render its decision immediately final, thus cutting off all rights of the parties to seek review. But it does not follow that the correction creates a new 30-day period before finality is secured. *225 The statute clearly provides for a 30-day period during which time an appeal may be taken, but on the expiration of that period the court is without jurisdiction. Crews v. Commissioner, 120 F. 2d 749. Under the statute the court on its own motion by merely correcting its judgment can neither extend nor contract the period during which it maintains jurisdiction. Furthermore, the correction by the Tax Court of its decision of November 24, 1948, did not alter the net result, it merely increased the amount of the tax imposed from $65,637.94 to $68,760.06, but made the latter amount subject to a postwar credit of $3,122.12. The modification was purely a formal or mechanical one, for it stated that in all other respects the “Decision” would stand as before entered.[3]
When the Tax Court rendered its decision on November 24, 1948, it started the running of a 30-day period which expired on December 24, 1948. Plaintiff recognized that this might be our determination and urges upon the court the further claim that in the event plaintiff is denied the deduction for 1949, it is entitled to the deduction for 1948, because plaintiff alleges it filed an amended claim on December 12, 1955. The “amended” claim reads in pertinent part, as follows:
This is not a new claim, but is a clarifying amendment of claim for $24,923.21, filed May 5,1954.
The original claim was based on a carryover of net loss from 1949 to 1950, in the amount of $43,120.45. It is the company’s primary position that its additional excess profits taxes for 1941-45, $400,225.19, paid in 1949, accrued in 1949.
It may be possible that the additional excess profits taxes for 1941 and 1942, $78,959.18, accrued in 1948, because it was in 1948 that the decision by the TJ.S. Circuit Court of Appeals for the Sixth Circuit became final, and it may be that the additional excess profits taxes for 1943-45, also accrued in 1948.
The purpose of this amended claim is to point out that, as far as 1950 is concerned, it doesn’t make any substantial difference in the loss carry-over to 1950, whether the additional excess profits taxes (whether for 1941-42 or 1943-45) accrued in 1948 or 1949. Lewyt Corporation v. Commissioner, 55-1 USTC Par. 9460.
*226 Since tlie amendment pertains solely to plaintiff’s claim to a loss carryover to 1950, it is unnecessary to determine whether in fact it is a timely filed amendment or a new claim because plaintiff must first show that a loss resulted in 1949 which could be used as a carryover to 1950. As it is our determination that the liability accrued in 1948, what plaintiff is really seeking is a deduction from gross income for 1948, and this, of course, would necessitate a recomputation of plaintiff’s tax returns for that year . The amendment does not pertain to plaintiff’s 1948 tax liability because no claim was filed for 1948. A new claim would be barred by the period of limitation in which a claim must be filed (26 U.S.C. (IRC 1939) § 322(b) (1) (1952 Ed.)). Therefore, the court will consider the question moot.
This brings us to the major portion of plaintiff’s claim which is based on plaintiff’s contention that the liability for the deficiencies assessed for 1943, 1944, and 1945 accrued in 1949. Surely, we cannot find that these tax liabilities accrued before the Tax Court’s decision of November 1948 became final. When then did the liabilities accrue? The general rule determinative of when a liability accrues is based on a leading Supreme Court decision, United States v. Anderson, 269 U.S. 422, and may be paraphrased as follows: If it is uncertain whether or not any liability exists there can be no accrual, for tax purposes, until the contingency disappears and the fact of liability becomes fixed and certain. If liability is recognized, but the amount is not yet determined, an estimated reasonably accurate amount should be accrued. The test of when the liability is recognized, established in United States v. Anderson, supra, has become the so-called “all events” test which the Court described as follows:
* * * In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee’s books. In the economic *227 and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued, [p. Ml]
The Supreme Court amplified the “all events” test in its holding in Dixie Pine Products Co. v. Commissioner, 320 U.S. 516. In that case the Court held that an accrual-basis taxpayer contesting liability in the courts could not have an accrual until the liability was established, but “might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated.” (320 U.S. at 519)
That principle was specifically affirmed in Security Flour Mills Co. v. Commissioner, 321 U.S. 281, and United States v. Consolidated Edison Co. of New York, Inc., 366 U.S. 380.
The position of the Internal Bevenue Service, since 1947, has been that unpaid amounts asserted against a taxpayer as additional taxes, subject to a dona fide contest, cannot be accrued so long as they are unsettled in amount and before the fact of liability is established, G.C.M. 25298,1947-2, C.B. 39. It is our view that the very narrow issue presented is when was liability established. The facts are clear that the determination by the Court of Appeals regarding plaintiff’s taxable years 1941 and 1942 resulted in decreased excess profits credits based upon invested capital for succeeding years 1943, 1944, and 1945. This established plaintiff’s liability which accrued when the decision of the Tax Court became final.
True, there was a dispute as to the amounts claimed by the taxpayer and amounts claimed by the Internal Bevenue Service. It is also true that the Bevenue Agent’s formalized report was not received by the plaintiff until February of 1949. However, the agent did deliver to the taxpayer his report in 1948, and in January before the formal report was delivered, after an audit, taxpayer’s auditor recommended that it sign form 874, the Waiver. This audit was made and undoubtedly based on figures contained in the agent’s 1948 report and information contained in taxpayer’s own books and records. Thus, we must hold that the tax accrued in 1948 within the meaning of the statute and cited cases. While this may be harsh treatment of the taxpayer, *228 the fact that it might equitably be entitled to the deduction cannot be taken into consideration by this court. United States v. Olympic Radio & Television, Inc., supra.
Consequently, the taxpayer’s claim must be denied, and the petition will be dismissed.
It is so ordered.
Eeed, Justice (Ret.), sitting by designation; Durfee, Judge, and Jones, Chief Judge, concur.
ETNDINGS OP PACT
The court, having considered the evidence, the report of Trial Commissioner Wilson Cowen, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff, Seiberling Eubber Company, is a corporation duly organized and existing under the laws of tire State of Delaware, with its principal office in Akron in the State of Ohio. It keeps its books and records and files its Federal tax returns on the accrual basis of accounting. Beginning with the year 1946, it filed its Federal tax returns on the calendar year basis but prior thereto filed its returns on a fiscal year basis ending October 31.
2. On March 15, 1949, the plaintiff filed its corporate income tax return for the calendar year 1948. The return reported a net income of $640,086.24 and a combined normal tax and surtax liability of $238,254.78 after a foreign tax credit of $4,733.16. The plaintiff paid the tax in quarterly installments in 1949: $59,563.70 on March 17, June 17, and September 19, and $59,563.68 on December 19.
3. On March 15,1950, the plaintiff filed its corporation income tax returns for the calendar year 1949 reporting thereon a net operating loss in the amount of $617,167.17. After an examination, the Commissioner of Internal Eevenue, pursuant to revenue agents’ report of March 31, 1952, increased the net operating loss to $627,252.51 for the calendar year 1949.
4. On its corporation income tax return for the calendar year 1947, plaintiff reported taxable net income of $376,768.28, and a tax liability of $141,349.36. The Com *229 missioner of Internal Revenue subsequently determined that plaintiff’s net income for the year 1947 before any net operation loss deduction was $441,136.87, and after the allowance as a deduction of the net operating loss for the year 1949 as a carryback in the same amount, plaintiff had no taxable income for the year 1947 and the amount of tax paid of $141,349.36 was refunded to plaintiff.
5. After allowing the balance of the net operating loss for 1949 as a deduction and of other adjustments, the Commissioner determined plaintiff’s taxable income subject to normal and surtax for 1948 was $356,460.44, and its tax liability thereon, after a credit for foreign taxes of $11,990.47, was $123,464.50. All payments of tax in excess of the $123,464.50 have previously been refunded to plaintiff.
6. In making his determination that plaintiff’s net operating loss for 1949 was $627,252.95, the Commissioner did not include therein the amounts of deficiencies in excess profits taxes imposed upon plaintiff by Subchapter E of Chapter 2 of the Internal Revenue Code of 1939, which were computed pursuant to the decision of the Court of Appeals for the Sixth Circuit, dated July 19,1948, for the fiscal years ending October 31, 1941 and 1942. The decision also produced a reduction in plaintiff’s equity invested capital reported on its returns for the fiscal years ending October 31,1943,1944, 1945, and the period October 31, 1945 to December 31,1945, which resulted in the determination of deficiencies in excess profits taxes for these years, which also were not included in determining the net operating loss for 1949.
7. In its excess profits tax return for the fiscal year ended October 31, 1942, plaintiff included in its equity invested capital a bad debt writeoff in 1939 of $1,361,495.81 which had been disallowed as a deduction for the fiscal year 1939. After an audit of plaintiff’s returns for the fiscal years ended October 31, 1941, and October 31,1942, the Commissioner of Internal Revenue, in accordance with a revenue agent’s report dated March 30, 1944, disallowed the restoration of the bad debt item to equity invested capital and determined certain deficiencies in and overassessments of *230 plaintiff’s income, excess profits, and declared value excess profits tax liabilities as follows:
Tear ending October 81,1941:
Income tax_$77,819.91 deficiency
D.V.E.P. Tax_ 7,611.29 deficiency
Excess profits tax_ (8,904.17) overassessment
Year ending October 31,1942:
Income tax_ (17, 538. 96) overassessment
D.V.E.P. tax_ 0
Excess profits tax_ 71,869. 69 deficiency
8. The plaintiff thereafter filed a petition in the Tax Court for a redetermination of the deficiencies in plaintiff’s tax liabilities for its fiscal years ending October 31, 1941, and October 31, 1942, raising two issues, as follows:
1st: Whether transactions conducted in 1934 whereby Seiberling Rubber Company acquired the Kemitex Products, Inc., stock amounted to a nontaxable reorganization within the meaning of section 112(b) (3), (4), or (5) of the Revenue Act of 1932.
2nd: Whether Seiberling Rubber Company, in computing its equity invested capital under the excess profits tax provisions was entitled to include in its accumulated earnings and profits at the beginning of each taxable year such portion of the partial bad debt deduction which was disallowed as a deduction for income tax purposes in 1939.
The second issue is the bad debt item referred to in finding 7. Inasmuch as both issues involved in plaintiff’s petition filed with the Tax Court affected excess profits credits based upon invested capital for succeeding years of 1943,1944,1945, and the two-month period ending December 31, 1945, the examination of plaintiff’s tax liability for those years was delayed pending a court decision for the years 1941 and 1942. After a hearing, the Tax Court of the United States promulgated its opinion on February 28, 1947. The opinion is reported at 8 T.C. 467 and may be referred to for an explanation of the issues involved in the controversy. The Tax Court in its opinion held in favor of the Commissioner on both issues.
9. Thereafter, plaintiff appealed the decision of the Tax Court to the Court of Appeals for the Sixth Circuit. On July 19, 1948, the Court of Appeals for the Sixth Circuit *231 reversed tbe Tax Court on the first issue of whether the transaction through which the plaintiff acquired the stock of Kemitex Products, Inc., was a tax-free reorganization and held that it was, and affirmed the Tax Court’s decision on the second issue and held that the Commissioner’s exclusion of the bad debt allowance from accumulated earnings and profits at the beginning of each year was proper. The Court of Appeals remanded the case to the Tax Court for further proceedings not inconsistent with its proceedings. The opinion of the Court of Appeals for the Sixth Circuit is reported at 169 F. 2d 595, and may be referred to for an explanation of the issues in controversy before that court. No petition for a writ of certiorari was filed with the Supreme Court by either party. The time for filing a petition for a writ of certiorari expired on October 17,1948.
10. The plaintiff, upon filing its petition with the Court of Appeals for the Sixth Circuit for review of the decision of the Tax Court dated February 28,1947, failed to file with the Tax Court a bond in accordance with Section 1145 of the Internal Eevenue Code of 1939, and deficiencies in taxes for 1941 and 1942 were, therefore, assessed and notices of demand for payment dated August 1,1947, were sent to the plaintiff by the Collector of Internal Eevenue, Cleveland, Ohio.
11. The amounts assessed were not those amounts as originally determined by the Commissioner, nor were they the amounts finally determined by the Tax Court (referred to in finding 12) but were the result of the disposition of certain other issues involved in the Tax Court proceedings. They were as follows:
10/31/41 Income tax_$66, 843. 39
10/31/41 D.V.E.P. tax_ 4,526.64
10/31/42 Excess profits tax_ 68, 760. 06
Overassessments scheduled were:
10/31/41 Excess profits tax_ 5,963.21
10/31/41 Income tax- 17,984. 58
12.The Tax Court on November 24, 1948, under Eule 50 of that court, entered the following decision in the case *232 mentioned above wherein plaintiff filed a petition with that court:
Pursuant to the mandate of the Circuit Court of Appeals, Sixth Circuit, and order of the Tax Court entered August 24, 1948, recomputation of petitioner’s tax liability were filed by the parties on November 8, 1948, and November 12, 1948. Hearing under Rule 50 was held on November 17, 1948. Now, therefore it is
ORDERED AND DECIDED :
That for the year ended October 31, 1941, there are deficiencies in petitioner’s income tax in the amount of $7,392.01, and in excess profits tax in the amount of $13,321.24; and there is no deficiency in declared value excess profits tax; that for the year ended October 31, 1942, there is a deficiency in petitioner’s excess profits tax in the amount of $65,637.94, and an overpayment of income tax in the amount of $17,964.58, which overpayment was made within two years before the filing of the deficiency notice.
13. On December 3, 1948, the Tax Court modified its decision of November 24,1948, quoted in finding 12 above, and entered the following decision:
That the Decision entered in the above-entitled proceedings on November 24, 1948, be and the same hereby is corrected as follows: the amount of deficiency in petitioner’s excess profits tax for the year ended October 31,1942, is changed from $65,637.94 to $68,760.06, which latter amount is subject to a post war credit of $3,122.12. In all other respects the Decision will stand as heretofore entered.
14. The total sum of $89,473.31 representing the amounts determined by the decision of the Tax Court on November 24, 1948, as modified by its decision of December 3, 1948, of deficiencies in income tax and excess profits tax for the years ending October 31, 1941, and October 31, 1942, was satisfied by a postwar credit of $3,122.12, a credit of the income tax overpayment of $17,964.58 for the fiscal year 1942, and a cash payment to the collector of $68,386.61 on January 17, 1949. An additional amount of $25,861.98, representing interest due on the deficiencies, was also paid to the collector on January 17,1949.
15. The Collector of Internal Revenue at Cleveland assessed an excess profits tax for the year 1941, based upon *233 the decision of the Tax Court dated November 24, 1948, against plaintiff on February 24, 1949, in the amount of $13,321.24.
16.Under date of January 25, 1949, the Collector of Internal Kevenue at Cleveland sent the plaintiff a demand for payment of a deficiency in excess profits tax for the year ending October 31, 1941, in the amount of $13,321.24, with interest thereon from January 15, 1942 to January 19,1949, in the amount of $5,603.68. The statement from the collector showed under the heading “Amount Paid” the following: “Less: Proposed overassessments for the years ended—
10/31/41-$85,195. 80 I.T.
10/31/42- 17,9'64. 58 I.T.
$103,160.38
No balance”
17. Under date of April 19, 1949, the collector sent the plaintiff three statements of income tax due. These statements showed (1) the deficiency in excess profits for the year ending October 31, 1941, of $13,321.24 plus interest in the amount of $5,603.68 satisfied by a credit of $17,964.58 for the overpayment of income tax for the year ending October 31, 1942, plus $960.34 paid by the plaintiff on January 17, 1949; (2) the deficiency in income tax for the year ending October 31,1941, of $66,843.38 and in declared value excess profits tax for the same year of $4,526.64 plus interest on those amounts to August 1, 1947, satisfied by a payment or credit of $85,195.80 made on February 4,1949, and a payment on January 17,1949, of $9,843.64, and another payment of $857.67 on the same day to cover interest on the $9,843.64 from August 1,1947 to January 14,1949; (3) the deficiency in excess profits tax for the year ending October 31,1942, of $68,760.06 plus interest thereon to January 17, 1949, partially satisfied by a postwar credit of $3,122.12 and the balance of the payments made by the plaintiff on January 17, 1949, leaving a balance of the deficiency in the amount of $1,431.23 and interest of $7,320.50 remaining due.
18. Under date of April 28, 1949, the collector at Cleveland, in response to a letter from the plaintiff dated April 21, *234 1949, wrote a letter to the plaintiff showing a balance due for the fiscal year 1942 of $7,799.69, including interest. The plaintiff paid the $7,799.69 on May 31,1949.
19. The plaintiff deducted the amounts paid in 1949 on account of interest on the deficiencies in computing income on its return for the year 1949, and the deduction was never questioned.
20. Pursuant to the decision of the Court of Appeals for the Sixth Circuit, referred to in finding 9 above, the Commissioner of Internal Revenue, in a revenue agent’s report of December 27, 1948, eliminated from plaintiff’s reported equity invested capital the bad debt item of $1,361,495.81 and after other adjustments in capital and income, determined certain deficiencies and overassessments for the years ending October 31, 1943, October 31, 1944, October 31,1945, and for the two months ending December 31,1945, in plaintiff’s income and excess profits taxes as set forth below:
Excess Profits Tax deficiencies:
Year ending October 31, 1943_$103, 064.22
Year ending October 31, 1944- 113, 600.16
Year ending October 31, 1945- 95, 029.96
Two months ending 12/31/45_ 31,335.62
$343,029. 96
Income Tax overassessments:
Year ending October 31, 1943-$33, 585.68
Year ending October 31, 1944,_ 15,252. 80
Year ending October 31,1945- 24, 507. 69
Two months ending 12/31/45_ 6,637.42
$79, 983. 59
The excess profits tax deficiencies were subject to a postwar tax credit in the amount of $10,403.94 for the year ending October 31, 1943, and $11,360.01 for the year ending October 31,1944. The computations as set forth in the revenue agent’s report dated December 27,1948, were discussed prior to that date by the revenue agent with Mr. O. E. Jones, plaintiff’s vice president, and Mr. H. E. Thomas, plaintiff’s assistant secretary and treasurer.
21.The revenue agent’s examination of plaintiff’s returns for the years 1943-1945 extended from about August 2,1948, *235 until the latter part of December of that year. During that period, there were many discussions between plaintiff’s representatives and the agent with respect to additions to income which he proposed to make, and deductions from income which he proposed to disallow. Specifically, the items which were in dispute in these oral discussions were the following:
(a) In 1942 the plaintiff set up accrued rehabilitation expenses of $30,000 in connection with its war contract to build gas tanks. Plaintiff contended that the cost of rehabilitation should be charged to 1943 when the contract was performed, but the agent disallowed the item on the ground that no accrued liability existed. He restored the claimed reserve to surplus for 1945;
(b) for the year ended October 31,1944, plaintiff claimed deductions of $12,493.98 as repairs. The agent disallowed the expenses as deductions from income and capitalized them;
(c) in 1944, plaintiff added to surplus $55,538.91, after deducting $7,289.58 for withholding taxes. The agent added the total of $62,828.39 to income in the year 1944, whereas plaintiff’s representatives claimed that the amount was received as final settlement of a contract involving Brazilian license fees earned in prior years but not collected until 1944 and that the addition of that amount to the 1944 income created an abnormality in its income and also affected its excess profits taxes;
(d) for the year 1945, the agent added to plaintiff’s income the sum of $1,800 for dividends on stock of the Seiber-ling Rubber Co. of Canada, Ltd., whereas plaintiff’s representatives contended that the dividends were in fact received by the Canling Holding Company, Limited, to whom plaintiff had transferred 8,000 shares of Seiberling Rubber Co. of Canada, Ltd., in exchange for the holding company’s note of $100,000;
(e) for the fiscal year ended October 31, 1945, plaintiff claimed expense deductions for nine items amounting to $50,985.05. Plaintiff contended that the expenditures were deductible as repairs, but the agent disallowed the deductions and capitalized them;
*236 (f) for the period from November 1,1945 to December 31, 1945, plaintiff had charged as an expense for advertising services the sum of $15,369.94; approximately $7,000 of the total had been billed to and paid for by plaintiff during the 2-month period and the remainder represented accrued items. The entire expense claimed was disallowed by the agent, who treated the items as expenditures for services and materials for which the plaintiff could not derive any benefit until a subsequent period.
(g) for the period from November 1,1945 to December 30, 1945, plaintiff had charged an expense of $2,500 for repairing and reconditioning a building when cafeteria equipment was moved from that building to a new cafeteria. The agent capitalized the amount claimed and disallowed it as an expense deduction.
22. When he completed his examination, the agent left with plaintiff’s representatives a form 874 “Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment”, as well as his preliminary report in the form of worksheets. There were minor errors in these worksheets which were corrected in the agent’s completed report dated December 27, 1948. At the time the agent left plaintiff’s office in the latter part of December 1948, plaintiff’s representatives did not agree to sign form 874 nor did they agree that they would accept the agent’s determinations on the disputed items listed in finding 21. They told the agent that they would wait until the final report was received and that the report would be submitted to plaintiff’s auditors before a decision was made.
23. Sometime prior to January 5, 1949 and before receiving the agent’s final report, plaintiff submitted his worksheets to its auditors in Cleveland. After examining the schedules which proposed the assessment of deficiencies amounting to about $241,000, plaintiff’s auditors wrote plaintiff on January 6,1949, in pertinent part as follows:
We do not find, as a result of the review, any well merited position which might be taken on protest of any of the changes proposed by the Commissioner. It would therefore be our recommendation that agreement be indicated by the signing of waiver form 874, whereby you would consent to assessment of the resulting tax.
*237 24. On January 13, 1949, plaintiff signed form 874, accepting the deficiencies and overassessments for the fiscal years 1943, 1944, and 1945, and the two months ending December 31,1945, in the amomits shown in the revenue agent’s report of December 27, 1948. Form 874 was signed after the recommendation of plaintiff’s auditors was received and after the matter had been discussed by plaintiff’s president and its treasurer. They were interested in stopping interest and in reaching an agreement on the deficiencies as soon as the auditors had approved the agent’s report.
25. Although the agent’s report was dated December 27, 1948, the final corrected copy thereof was not mailed to plaintiff until February 15,1949, and was received by plaintiff a day or two thereafter.
26. Aside from the oral protest which plaintiff’s representatives made to the revenue agent in the period from August 5 to the latter part of December 1948, with respect to the items referred to in finding 21, plaintiff did not make nor file with the Collector of the Internal Revenue any protest on account of the agent’s report.
27. Plaintiff, on May 31,1949, paid the collector’s bills for the deficiencies in excess profits taxes for the fiscal years 1943, 1944, and 1945, and for the last two months of 1945, to the assessment of which it had consented on January 13, 1949.
28. The adjustments to plaintiff’s tax returns for the years 1943-1945, as provided in the revenue agent’s report of December 27, 1948, substantially affected not only plaintiff’s normal taxable net income and its excess profits income for those periods hut also affected its excess profits credits, based on income and on invested capital for those years. In addition to the exclusion from equity invested capital of $1,361,495.81, pursuant to the decision of the Court of Appeals and the judgment of the Tax Court, there were other adjustments which affected plaintiff’s excess profits tax liabilities for the years stated. As a result of some of the adjustments provided for in the revenue agent’s report of December 27, 1948, plaintiff’s excess profits credit for the fiscal year 1943 based on income exceeded that based on invested capital. The excess profits credit based on income in *238 tbe amount of $513,816.73 was used in computing the deficiency for 1943.
As stated in finding 21, the Internal Revenue agent in his report of December 27, 1948, added to plaintiff’s 1944 income the amount of $62,828.39 for Brazilian license fees collected by plaintiff in that year but earned in prior years. This addition required a computation of plaintiff’s excess profits tax for 1944 under Section 721 of the Internal Revenue Code of 1939, as well as a change in the computation of foreign tax credits.
29. On May 11,1949, the Commissioner of Internal Revenue assessed deficiencies in excess profits taxes against the plaintiff in the following amounts:

Postwar Credit Net Amount

Year ending Oct. 31, 1943, $103,064.22_$10,403. 94 $92, 660.28
Year ending Oct. 31, 1944, $113,600.16_ 11, 360. 01 102,240.15
Year ending Oct. 31, 1945, $95,029.96_ 95, 029.96
Two months ending Dec. 31,1945, $31,335.62_ 31,335. 62
After this suit was commenced, the Commissioner had a computation made of the excessive profits tax deficiencies for the fiscal years ending October 31, 1943, 1944, 1945, and the two months ending December 31,1945, which would have resulted if the only adjustment of the plaintiff’s excess profits tax liabilities for those years had been the exclusion from equity invested capital of $1,361,495.81, the bad debt item disallowed by the Court of Appeals decision of July 19, 1948, and the exclusion of the resulting deficiencies for the years subsequent to 1943. So computed the deficiencies would have been as follows:
Fiscal year ending Oct. 31, 1943- $69, 858.31
Fiscal year ending Oct. 31, 1944- 74,921.40
Fiscal year ending Oct. 31, 1945_ 77,271.93
Period Nov. 1, 1945 to Dee. 31, 1945_ 13, 576.43
Total_ $235,628.07
30. On February 25,1953, plaintiff filed with the Director of Internal Revenue at Cleveland, Ohio, a claim for refund of income tax for the year 1948 in the amount of $123,464.50, grounded upon the assertion that its net operating loss *239 carryback from 1949 should, be increased by the amount of additional excess profits tax paid during 1949 for the fiscal years ending October 31, 1941,1942,1943,1944,1945 and the period ending December 31,1945. By registered mail dated February 8, 1956, plaintiff was advised of the rejection of this refund claim.
31. On May 15, 1951, after an extension of the time for filing to that date, the plaintiff filed its corporate income and excess profits tax return for the year 1950. The return reported a normal tax net income of $4,268,280.58, a combined normal tax and surtax liability of $1,782,749.52, before a credit of $1,435 for Canadian income taxes, and an excess profits tax liability of $434,192.48, both of which liabilities the plaintiff paid in 1951 in quarterly installments as follows: March 23, $672,000; June 27, $657,304.20; September 18, $443,101.40; December 20, $443,101.40.
32. On April 2,1954, the plaintiff filed a claim for refund for the year 1950, asserting an additional deduction for accrued vacation pay. Upon consideration thereof the Commissioner of Internal Revenue determined that the plaintiff had overstated its normal tax net income in the amount of $45,965.89 and that there had been an oyerassessment of income and excess profits taxes for 1950 in the amount of $23,940.04, which has been refunded to plaintiff.
33. On May 5, 1954, the plaintiff filed a claim for refund of income and excess profits taxes in the amount of $24,923.61 for the year 1950. The claim was based on the assertion that plaintiff had an operating loss of $43,120.45 in 1949 and that it was entitled to carry over the loss to 1950.
34. In making the determinations for the year 1950 the Commissioner did not allow as deductions for purposes of computing net operating loss for the year 1949, the deficiencies in excess profits taxes for the years 1941 and 1942 involved in the proceedings before the Tax Court and the Court of Appeals, nor the deficiencies in excess profits taxes for the years 1943, 1944, and 1945, and the two months’ period ending December 31,1945.
35. On or about December 12,1955, the plaintiff filed with the Director of Internal Revenue at Cleveland, Ohio, an *240 amended claim for refund of $24,923.21 of income and excess profits taxes for the year 1950. The amended claim read in pertinent part as follows:
This is not a new claim, but is a clarifying amendment of claim for $24,923.21, filed May 5,1954.
The original claim was based on a carryover of net loss from 1949 to 1950, in the amount of $43,120.45. It is the company’s primary position that its additional excess profits taxes for 1941-45, $400,225.19, paid in 1949, accrued in 1949.
It may be possible that the additional excess profits taxes for 1941 and 1942, $78,959.18, accrued in 1948, because it was in 1948 that the decision by the U.S. Circuit Court of Appeals for the Sixth Circuit became final, and it may be that the additional excess profits taxes for 1943-45 also accrued in 1948..
The purpose of this amended claim is to point out that, as far as 1950 is concerned, it doesn’t make any substantial difference in the loss carry-over to 1950, whether the additional excess profits taxes (whether for 1941-42 or 1943-45) accrued in 1948 or 1949. Lewyt Corporation v. Commissioner, 55-1 USTC Par. 9460.
36. On or about February 8,1956, the District Director of Internal Eevenue notified plaintiff by registered mail that its claims for refund based upon a claimed deduction of the aforesaid excess profits deficiencies in 1949 for purposes of computing net operating loss and a carryover to 1950, were disallowed in their entirety.
37. Plaintiff did not continue to dispute the amount of the 1941 and 1942 deficiencies after the Court of Appeals made its determination and the Tax Court rendered judgment.
38. The trial was limited to the issues of law and fact relating to the right of plaintiff to recover. If it is held that plaintiff is entitled to recover, the amount of the recovery is to be determined pursuant to Eule 38 (c).
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover and, therefore, the petition is dismissed.

 1st: Whether transactions conducted in 1934 whereby Seiberling Rubber Company acquired the Kemitex Products, Inc., stock amounted to a nontaxable reorganization within the meaning of section 112(b) (3), (4), or (5) of the Revenue Act of 1932.
2nd: Whether Seiberling Rubber Company, In computing its equity invested capital under the excess profits tax provisions was entitled to include in its accumulated earnings and profits at the beginning of each taxable year such portion of the partial bad debt deduction which was disallowed as a deduction for income tax purposes in 1939.

 The applicable statutes are sections 122(a), 122(b), 122(d), and 322 of the Internal Revenue Code of 1939 (26 U.S.C. (1952 Ed.) §§ 122, 322). Inasmuch as these statutes are not really in contest in this case, it would serve no useful purpose to abstract them here.

 For a discussion of an analogous problem dealing with appealability in tbe Federal courts, see 75 Harr. L.R. 351, 356 (1961), and tbe autborities cited therein.