EDWIN J. SCHOETTLE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 163. Promulgated May 5, 1944.

*H. Ober Hess, Esq.*, and *Wm. R. Spofford, Esq.*, for the petitioner. *Myron S. Winer, Esq.*, for the respondent.

OPINION.

TURNER, *Judge*: The respondent has determined deficiencies in income and excess profits taxes against the petitioner for 1940 in the respective amounts of $4,636.12 and $4,225.02. The question presented is whether the petitioner is entitled to a loss deduction of $19,991.60, paid under a judgment rendered on a bond given by petitioner to secure payment of its 1917 income and excess profits taxes.

The facts have been stipulated and are found as stipulated.

The petitioner is a Pennsylvania corporation, having its principal office and place of business in Philadelphia, Pennsylvania. It filed its return for corporation income and excess profits taxes for the calendar year 1940 with the collector of internal revenue for the first collection district of Pennsylvania.

On March 29, 1918, petitioner filed its corporation income and excess profits tax returns for the calendar year 1917, disclosing a total tax liability of $2,783.18, which was duly assessed and paid. On March 15, 1923, respondent sent petitioner a letter showing an additional assessment for the year 1917 of $33,786.97 and advising that, in order that the collection of the tax might not be jeopardized by the delay incident to the giving of the usual 30 days notice, an immediate assessment would be made; and that the Bureau would entertain a claim in abatement if an appeal should be filed within 30 days of the receipt of the letter. On March 21, 1923, respondent assessed additional corporation income and excess profits taxes against petitioner for the year 1917 in the above amount of $33,786.97. On April 11, 1923, petitioner filed with the collector a claim for abatement of the assessment. On April 12, 1923, the collector served upon petitioner a notice and demand for payment of the additional assessment on or before April 22, 1923, but petitioner failed and refused to make payment as demanded. The collector, on April 24, 1923, sent a letter to petitioner acknowledging receipt of its claim for abatement of the additional assessment and stating that the collector could not officially accept the claim for abatement unless petitioner filed a bond for the full amount of the additional assessment. Subsequently petitioner was advised by the head of the claims division of the collector's office, that if it failed to furnish the bond requested in connection with the claim for abatement distraint would be made in the usual manner. Petitioner discussed the question of filing the bond with its accountant and its attorney, who advised the filing of the bond as suggested by the collector. On May 4, 1923, pending consideration by respondent of the claim for abatement, petitioner, as principal, and the Central Trust & Savings Co., as surety, executed and delivered the bond to the collector. The bond was accepted by the collector on the same date. The bond was as follows:

KNOW ALL MEN BY THESE PRESENTS, that EDWIN J. SCHOETTLE COMPANY, as principal, and CENTRAL TRUST AND SAVINGS COMPANY, as Surety, are held and firmly bound unto BLAKELY D. McCAUGHN, Collector, First District, Pennsylvania, in the sum of Thirty three thousand Seven hundred eighty-six and 97/100 Dollars, lawful money of the United States for the payment whereof we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, the Collector of Internal Revenue for the First District of Pennsylvania has assessed against Edwin J. Schoettle Company the sum of $33,786.97 additional income and excess profits tax for 1917 and whereas the said Edwin J. Schoettle Co. has filed a claim in abatement for such assessment.

Now, THEREFORE, the condition of the foregoing obligation is such that if the principal shall on notice and demand by the Collector duly pay any part of such tax found by the Commissioner to be due, with interest at the rate of six per cent. per annum from the time such tax would have been due had no such claim been filed, and shall otherwise well and truly perform and observe all the provisions of the law and the regulations, then this obligation is to be void but otherwise to remain in full force and virtue.

Upon execution and delivery of the bond, the collector refrained from and postponed collection of the taxes assessed. The claim for abatement was considered by respondent, and on March 12, 1924, respondent notified petitioner in writing that the claim would be allowed in the amount of $13,795.37 and rejected in the amount of $19,991.60. On or about April 1, 1924, petitioner filed a protest, claiming that it had been overassessed more than the amount determined by respondent. Pursuant to this protest, respondent further considered the claim for abatement, and on December 15, 1924, reaffirmed his prior determination that the claim would be allowed in the amount of $13,795.37 and rejected in the amount of $19,991.60.

On February 10, 1925, petitioner filed with the United States Board of Tax Appeals a petition for redetermination of the above assessment of additional income and excess profits taxes as determined by the respondent for 1917. On May 11, 1925, the Board of Tax Appeals denied a motion filed by respondent to dismiss the petition for lack of jurisdiction. On August 14, 1928, petitioner filed a motion for leave to file an amended petition raising the question of the statute of limitations and to confine the hearing then fixed for September 11, 1928, to a consideration of the question of the statute of limitations, on the ground that under the Revenue Act of 1924 the period of limitation had expired on March 29, 1923. On August 29, 1928, the Board of Tax Appeals entered an order granting the motion of petitioner, and, after the hearing, entered its decision on October 12, 1928, in favor of petitioner on the ground of the bar of the statute of limitations. The findings of fact and opinion appear at 13 B. T. A. 950. On October 29, 1930, and on other occasions subsequent thereto, the collector made demand upon petitioner for payment of the 1917 income and excess profits taxes which had not been abated under the claim for abatement, together with interest thereon, and, notwithstanding

the said notice and demand, petitioner failed, neglected, and refused to pay the said taxes and interest as demanded.

An amount of $611.81 was credited, on October 31, 1927, to the 1917 account of petitioner on the books of the collector, due to an over-assessment of income tax for the year 1918. The said entry was reversed on the books of the collector on December 24, 1927, on letter from the respondent dated December 1, 1927, due to the protest of the petitioner that the credit should be reversed and a refund be made to it because an appeal was pending against the tax liability determined by the respondent to be due for the year 1917, against which the said credit of $611.81 was applied, and that the outstanding taxes determined by the respondent to be due for 1917 were also protected by a surety bond. Accordingly, the credit due to petitioner on account of the overassessment of income tax for the year 1918, plus interest, was paid to it by check on February 2, 1928.

On September 10, 1932, a credit of $1,015.32 was applied by the collector to the account of petitioner for the year 1917, which credit resulted from an overassessment of income tax for the year 1930. On October 6, 1932, petitioner protested the credit to its account for the year 1917 of this amount, but respondent, by a letter of November 17, 1932, refused to issue a check to petitioner in the amount of the overassessment.

On December 6, 1935, the collector started a suit at law in the District Court of the United States for the Eastern District of Pennsylvania, for the purpose of enforcing petitioner's liability under the bond.

On February 21, 1938, petitioner filed a bill in equity in the same court for rescission and cancellation of the bond. This bill in equity was dismissed on May 12, 1938, and no appeal was taken from the decision. On August 29, 1938, the District Court entered its opinion and decision in the suit at law, deciding against petitioner and in favor of the collector. No appeal was taken from this decision. On September 27, 1939, judgment was entered against petitioner in the proceeding at law, in the total amount of $38,668.03, and on September 4, 1940, this judgment, as amended to the amount of $38,196.40, became final. Petitioner paid the judgment in full by payments made on September 4, 1940, and September 9, 1940. The amended judgment of $38,196.40 was computed as follows:

| | |
|---|---|
| Principal amount | $19,991.60 |
| Interest at 6% on $19,991.60 from April 12, 1923, the date of first notice and demand, to August 27, 1932, the date of the credit for overpayment of 1930 tax | 11,245.28 |
| Interest on $18,976.28 ($19,991.60 minus the credit of $1,015.32 for 1930 tax) from August 27, 1932, to September 12, 1939 | 8,017.48 |
| [Sic] | $39,254.35 |

Less:

    Credit for overpayment of 1930 tax_____ $1, 015. 3½

    Interest on $1,015.32_____ 42. 63

                                         1, 057. 95

                                       $38, 196. 40

Petitioner has not filed any claim for refund of any payment of Federal income and excess profits taxes for the calendar year 1917.

Petitioner claimed the item of $19,991.60 as a deduction from gross income on its income and excess profits tax return for the year 1940 as a "loss on adverse judgment." The item was disallowed by respondent. Petitioner also claimed as a deduction from gross income on its return the amount of interest paid on the judgment as indicated above, and respondent allowed the deduction.

The deduction of Federal income and excess profits taxes is specifically barred under section 23 (a) (1) of the Internal Revenue Code. If, therefore, the petitioner is to prevail, it must be concluded that the payment under the bond was not a payment of the 1917 income and excess profits taxes to secure the payment of which the bond was given.

Petitioner contends that the payment made was the payment of a contractual liability; that the contractual liability was not a tax liability; that by reason of the said payment it sustained a loss for which it was not compensated by insurance or otherwise and, under section 23 (f) of the Code, is entitled to a deduction therefor.

Petitioner, citing *United States* v. *John Barth Co.*, 279 U. S. 370, and *United States* v. *Wyoming Central Association*, 70 Fed. (2d) 869, relies mainly upon the distinction made by the courts between a cause of action based on a bond given to secure the payment of taxes and the more direct or summary procedures set up in the statute for the collection of taxes.

In those cases, a distinction is made as to the applicability of the statute of limitations, holding that the statute running against the collection of taxes in the latter case stated above does not apply in a proceeding on the bond, for the reason that the bond is a contract and its terms control. Other than the distinction so made, there is nothing that can be construed as holding that the payment under the bond, or of the judgment rendered on the bond, is different from a payment of tax where no bond is involved.

In *United States* v. *John Barth Co.*, *supra*, Chief Justice Taft, in construing paragraph 14 (a) of section 234 (a) of the Revenue Act of 1918, stated: "The plain purpose of paragraph 14 (a) was to effect a substitution for the obligation arising under the return and assessment to pay the tax, of the contract entered into in the bond to pay any part of the tax found to be due upon the subsequent determination of the Commissioner * * *."

After stating that the making of the bond gives the United States a cause of action separate and distinct from an action to collect taxes which it already had, the Chief Justice further said: "The postponement of the collection of the taxes returned was a waiver of the statutory limitation of five years that would have applied had the voluntary return of the taxpayer stood and no bond been given," and "To avoid the result usually ensuing from the return which he himself made, the taxpayer was permitted by a bond temporarily to postpone the collection and to substitute for his tax liability his contract under the bond. The object of the bond was not only to prevent the immediate collection of the tax, but also to prevent the running of time against the government. The taxpayer has obtained his object by the use of the bond, and he should not object to making good the contract by which he obtained the delay he sought."

In *United States* v. *Wyoming Central Association, supra*, we find similar language. There, as here, a bond was given to accompany the claim in abatement, and the question posed by the court was, "Does the bond contain a promise to pay the tax or is it simply an agreement to save the collector harmless upon his official bond?" In answer to the query, the court stated: "When the entire bond is read with the provisions of section 279 (a) in mind, we think it must be construed as conditioned to save the collector 'harmless from liability under his bond filed with the Treasurer of the United States,' and to pay the tax, if the claim for abatement shall be rejected by the Commissioner."

In that case, as here, the bond and the claim in abatement were given after the bar of the statute of limitations on collection had fallen. When the assessment was made the Revenue Act of 1921 was in force, and, in construing section 250 (d) thereof, and as continued to section 277 (a) (2) of the Revenue Act of 1924 (applicable therein), the court stated:

But the limitation statute did not extinguish the tax. It was a bar to the remedy only. This bar of the statute may be waived, and a waiver is valid even though it is executed subsequently to the running of the statute. *Helvering* v. *Newport Co.*, 54 S. Ct. 480, 481, 78 L. Ed. ——, decided by the United States Supreme Court March 5, 1934; *McDonnell* v. *United States*, 288 U. S. 420, 53 S. Ct. 410. 77 L. Ed. 869; *Burnet* v. *Chicago Railway Equipment Co.*, 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. 349; *Stange* v. *United States*, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335; *W. P. Brown & Sons Lbr. Co.* v. *Commissioner* (C. C. A. 6) 38 Fed. (2d) 425.

In *Simmons Mfg. Co.* v. *Routzahn* (C. C. A. 6) 62 Fed. (2d) 947, at page 950, the court, in considering a bond, said:

"But, aside from the contractual obligation created by the bond, we think the bond constituted a waiver of the period of limitation, not, perhaps, the express or technical waiver provided for by the so-called consent clause (section 250 (d)), of the 1921 act, but at least an implied waiver."

See, also, *Bryant-Link Co.* v. *Hopkins*, (C. C. A. 5) 47 F. (2d) 1068.

It therefore follows that in 1925 when the bond was given, there was a tax liability against the Wyoming Company which, though barred, was not extinguished. There was a moral obligation to pay the tax and that was a sufficient consideration for the bond. *Snyder* v. *Routzahn* (D. C. Ohio) 55 F. (2d) 396.

In *Gulf States Steel Co.* v. *United States*, 287 U. S. 32, the Supreme Court, in passing on the effect of the Board of Tax Appeals' finding that there was no deficiency because the statute of limitations had run, and holding that the Government could recover on the bond given in an abatement proceeding, stated:

\* \* \* As the Board failed to pass upon the Commissioner's refusal to reduce the amount of the assessment, that sum, with interest, etc., now represents what is due upon the bond. The Board expressly disclaimed purpose to rule concerning this obligation—the question was not present. It might, with propriety, have examined the objections to the amount of the 1923 assessment; but the taxpayer asked another course.

It is, in our opinion, clear that the courts in the cases relied on by petitioner, as well as in the other cases here cited, consider the amount secured by the bond as "taxes."

When the petitioner received notice of the additional assessment, it could have paid the taxes and then sued to recover, but it chose the course of filing a claim for abatement and of executing the bond to secure the payment of the tax. The tax liability was the basis for the execution of the bond. Petitioner prevented distraint and postponed collection of the taxes. The bond thus served the purposes of the petitioner and the purpose of the Government in protecting it against the running of time. As the petitioner voluntarily executed the bond in which it acknowledged the additional assessment of the income and excess profits taxes for 1917 and filed a claim in abatement for such assessment, and as it bound itself to pay any part of such tax found by the Commissioner to be due, it would be ignoring the purpose of the bond and the intention of the parties to hold, in construing the statute on deductions, that a payment of the judgment on the bond was other than a payment of taxes. Petitioner has voluntarily provided another method for respondent to collect the amount due on the tax liability.

Petitioner makes the further argument that not only had the period prescribed by the statute for collection of the above taxes expired, but, under section 1106 (a) of the Revenue Act of 1926,[1] liability therefor

---

[1] Sec. 1106. (a) The bar of the statute of limitations against the United States in respect of any internal-revenue tax shall not only operate to bar the remedy but shall extinguish the liability; but no credit or refund in respect of such tax shall be allowed unless the taxpayer has overpaid the tax. The bar of the statute of limitations against the taxpayer in respect of any internal-revenue tax shall not only operate to bar the remedy but shall extinguish the liability; but no collection in respect of such tax shall be made unless the taxpayer has underpaid the tax.

was extinguished, and that section 612 of the Revenue Act of 1928,[2] repealing section 1106 (a), did not reinstate the liability. The Supreme Court held otherwise in *Helvering* v. *Newport Co.*, 291 U. S. 485, and in *United States* v. *John Barth Co.*, *supra*, the Court said that, a bond to secure the payment of the taxes having been given, it was not necessary to consider the question whether section 612 gave life to the tax retroactively, "for the reason that the act of 1926 does not affect, and was not intended to affect, the obligation arising out of the bond." The petitioner makes a substantially similar argument with respect to section 3770 (a) (2) of the Internal Revenue Code,[3] contending that that section "completely discountenances any argument that a theoretical tax liability existed when petitioner paid the judgment in 1940." It reasons that, "if Congress intended a theoretical liability for an outlawed tax to continue in existence, it would not have enacted that a payment of such tax should be refundable solely because outlawed when paid." In making this argument, the petitioner ignores the conclusion of the courts expressed in several of the cases cited above as to the effect of a bond given to secure the payment of taxes. The same argument was made in *McCaughn* v. *Philadelphia Barge Co.*, 44 Fed. (2d) 665, with respect to section 607 of the Revenue Act of 1928, which, for the purposes here, is identical with section 3770 (a) (2), relied on by the petitioner. The court there said that section 607 was not applicable to a payment under a bond given to secure the payment of taxes, explaining that payment under a bond was not a tax paid "after the expiration of the period of limitation properly applicable thereto," since on the giving of the bond the taxpayer waived the limitation, and there was no longer any period of limitation "properly applicable."

From an examination of the statutes and the pronouncements of the courts in the cases cited, we think it apparent that the payments made in the instant case were payments of Federal income and excess profits taxes, with interest thereon, and it is of no consequence that the said taxes were paid pursuant and according to the terms of a contract between the taxpayer and his Government rather than the procedures set up in the statute for the normal and usual collection and payment of such liabilities. The issue here is resolved for the respondent.

*Decision will be entered for the respondent.*

---

[2] SEC. 612. REPEAL OF SECTION 1106 (a) OF 1926 ACT.

Section 1106 (a) of the Revenue Act of 1926 is repealed as of February 26, 1926.

[3] SEC. 3770. AUTHORITY TO MAKE ABATEMENTS, CREDITS, AND REFUNDS.

(a) TO TAXPAYERS.—

*　　*　　*　　*　　*　　*　　*

(2) ASSESSMENTS AND COLLECTIONS AFTER LIMITATION PERIOD.—Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim.