*Decision will be entered under Rule 50.*

TAYLOR INSTRUMENT COMPANIES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20236. Promulgated March 10, 1950.

*Hugh Satterlee, Esq.*, for the petitioner.
*Walter Mandry, Esq.*, for the respondent.

OPINION.

OPPER, *Judge*: A deficiency in excess profits tax for petitioner's taxable year ended July 31, 1945, determined in the amount of $3,179.92, is in controversy. Petitioner also claims an overpayment. One of the issues has been settled by agreement of the parties, and the question for decision is whether petitioner is entitled to deduct New York State franchise taxes accrued by it in fiscal 1945, where, due to renegotiation of its war contracts, a part of the income on which the franchise tax was based was ultimately reduced. All of the facts have been stipulated.

The stipulated facts are hereby found. Petitioner, a New York corporation, with its principal office in Rochester, New York, filed its income and excess profits tax returns for the year in issue with the collector of internal revenue for the twenty-eighth district of New York, at Buffalo. It has consistently kept its books and filed its Federal income and excess profits tax returns on an accrual basis of accounting, with a fiscal year ending July 31.

Due to revisions of the New York State franchise tax law, for purposes not here material, petitioner's New York State franchise tax for the "privilege period" November 1, 1944, to July 31, 1945, was computed in three parts, based upon the net income allocable to New York State for petitioner's three fiscal years ended, respectively, July 31, 1943, 1944, and 1945. New York State franchise tax returns

reporting petitioner's net income for those years were duly filed, showing income and computing a tax as follows:

| Fiscal year | 1943 | 1944 | 1945 |
|---|---|---|---|
| Filing date | May 15, 1944 | June 15, 1945 | May 15, 1946 |
| Entire net income | $2, 200, 586. 58 | $2, 598, 054. 81 | $3, 547, 194. 77 |
| Allocable to New York: | | | |
| Per cent | 93. 3% | 95. 28% | 94. 73% |
| Amount | $2, 053, 147. 28 | $2, 475, 426. 62 | $3, 360, 257. 60 |
| Tax shown in return | 123, 188. 84 | 148, 525. 60 | 151, 211. 59 |

Petitioner's war contracts for the fiscal years ended July 31, 1943, 1944, and 1945, were subject to renegotiation by the United States, and renegotiation proceedings for the years 1944 and 1945 were instituted and concluded with relation to the Federal and state tax dates as follows:

| Fiscal year | 1944 | 1945 |
|---|---|---|
| End of year | July 31, 1944 | July 31, 1945 |
| Federal return due | Oct. 15, 1944 | Oct. 15, 1945 |
| New York return filed | June 15, 1945 | May 15, 1946 |
| Renegotiation proceedings begun | Mar. 22, 1945 | July 8, 1946 |
| Renegotiation agreement executed | Oct. 31, 1945 | May 21, 1947 |
| Credit allowed by state | Mar. 26, 1946 | Sept. 12, 1947 |

Petitioner deducted on its excess profits tax return the amount of $287,733.10 on account of New York State franchise taxes for fiscal 1945. Respondent in his notice of deficiency reduced that figure to $282,230.25. Petitioner now claims that it is entitled to a deduction of $435,511.15, being the adjusted total of the amounts due on its New York State franchise tax returns. The parties are in agreement as to the amount of the deduction based upon petitioner's income for fiscal 1943.

Were *E. B. Elliott Co.*, 45 B. T. A. 82, still authority in this field, respondent's contention would have to prevail. But the theory that accrual basis accounting permits of adjustments for developments subsequent to the close of the tax year, even though relating to the income of that year, has now been repudiated with a certainty that seems to forbid reexamination. *Security Flour Mills* v. *Commissioner*, 321 U. S. 281; *Stanard-Tilton Milling Co.*, 3 T. C. 1026, 1030; *Baltimore Transfer Co.*, 8 T. C. 1, 9. In fact, as applied to circumstances in many respects comparable to these, the rule has been stated otherwise. *Western Cartridge Co.*, 11 T. C. 246. There, Connecticut income taxes paid when due but subject to reduction because of subsequent renegotiation were held deductible in the year of payment.

We think it clear that if at the end of petitioner's taxable year it owed New York State franchise taxes in the amount specified and was required to pay them, as the record appears to demonstrate, and if at that time its right to claim a refund of those taxes was not sufficiently assured or ascertainable in amount so as to justify accrual of a corre-

sponding refund, all deductions were proper and should have been allowed. See *Commissioner* v. *Thatcher & Son* (C. C. A., 2d Cir.), 76 Fed. (2d) 900.

As to the year 1945, there seems little question that the results of renegotiation were still an unknown quantity. At the close of the year on July 31 renegotiation proceedings for that year had not even been instituted. They were not begun until almost a year later and were not concluded until May of 1947. The only amount accruable on July 31, 1945, was hence petitioner's full franchise tax liability.

A slightly more arguable case is presented by respondent as to 1944. By the close of fiscal 1945 renegotiation proceedings were in progress. But it was not until a conference on August 24, 1945, that any figure was agreed upon, and that was subject to the furnishing of additional information on August 30. Although a proposed agreement was forwarded on September 13 and executed by petitioner on September 28, it was not finally executed until October 31, which was not only subsequent to the close of petitioner's fiscal year, but even later than the time provided by law for the filing of its income and excess profits tax return on October 15.

In the meantime, the full amount of the New York State franchise tax liability based on 1944 income had been reported and apparently had been paid. Only after completion of the renegotiation process could petitioner's claim for refund of the franchise tax be submitted and acted upon. *Western Cartridge Co.*, *supra*. The refund was not actually made until March 26, 1946.

Under these circumstances, and following the authorities cited, we think it must follow that, by the end of petitioner's fiscal year, neither its liability for New York State franchise taxes nor their amount were so adjusted as to require it to deduct from its excess profits net income any smaller amount than that based upon its then known New York State income for both 1944 and 1945. We conclude that respondent erred in the determination of the deficiency.

*Decision will be entered under Rule 50.*