GLOBE PRODUCTS CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9070–75.     Filed July 5, 1979.

*Theodore W. Hirsh, Harold Altscher,* and *Harry D. Shapiro,* for the petitioner.

*Steven Mopsick* and *R. Dale Eggleston,* for the respondent.

OPINION

RAUM, *Judge:* The Commissioner determined a deficiency in petitioner's 1972 Federal income tax in the amount of $78,750 and an addition to tax under section 6651(a), I.R.C. 1954, in the amount of $3,938. Petitioner is a former member of an affiliated group of corporations that filed consolidated returns. After concessions, the only issue presented is whether petitioner, an accrual basis taxpayer, may deduct in the year at issue any part of its liability under an agreement with other former affiliates to share payment of Federal income taxes and interest owed in respect of earlier consolidated return years. The case was submitted on a stipulation of facts.

Petitioner Globe Products Corp. (Globe) is a Maryland corporation having its principal offices in Baltimore, Md. Globe filed its Federal income tax returns for the taxable year 1972 with the District Director of Internal Revenue in Baltimore, Md. Globe uses the accrual method of accounting for Federal income tax purposes.

In 1958, the president and sole stockholder of Globe, Paul Huddles, entered into an agreement with Premier Corp. of America (Premier) and Artistic-Globe, Inc., a wholly owned subsidiary of Premier, for the sale of all of Globe's stock to Artistic-Globe, Inc. The stock was transferred from Huddles to Artistic-Globe, Inc., in return for a note. Payment of the note was to be made from the dividends distributed by Globe to Artistic-Globe, Inc., with the balance of the note to be paid at the end of 10 years from its date.

From 1959 through 1962, Globe was a wholly owned subsidiary of Artistic-Globe, Inc., which in turn was a wholly owned subsidiary of Premier. During that period, Globe was one of approximately 40 wholly owned and affiliated (including second tier) subsidiaries of Premier. All such subsidiaries, whether first or second tier or otherwise affiliated, will be referred to hereinafter simply as "subsidiaries." Premier and its subsidiaries (Premier Group) filed consolidated Federal income tax returns for each of the years 1959 through 1962. In 1959, 1960, and 1961, the Premier Group reported no taxable income on its Federal income tax return. In 1962, the Premier Group reported a modest amount of consolidated income on its Federal income tax return and paid a relatively small amount of consolidated income tax. In each of the years 1959 through 1962, the Premier Group operated profitably but claimed the benefit of a substantial consolidated net operating loss carryforward to eliminate all taxable income of the first 3 years and a large part of the taxable income in the fourth year.

In 1968, all of the stock of Globe was repurchased by Paul Huddles from Premier following Premier's default on the note given to Huddles in connection with the 1958 purchase of Globe's stock. Huddles paid $25,000 for this stock and, in addition, discharged the balance of the Premier debt under the note.

By the end of 1968, Premier had disposed of all but two of its former subsidiary corporations. By the end of 1972, Premier had no operations of its own and was insolvent. As of that time, most of its former subsidiaries had become worthless and were dissolved; only Globe and seven other former subsidiaries (not all of which were subsidiaries during all of the years 1959 through 1962) remained in existence.

On February 6, 1970, a notice of deficiency (Premier Group notice of deficiency) specifically naming Premier and each of its

present and former subsidiaries, including Globe, was sent by the Internal Revenue Service to Premier. The Premier Group notice of deficiency proposed a deficiency in consolidated Federal income tax liabilities for the years 1959 through 1962 in the aggregate amount of $5,250,346.98, exclusive of interest. The proposed deficiency resulted in major part from the disallowance of the net operating loss carryforward claimed on Premier's consolidated Federal income tax returns.[1]

In late 1968, in contemplation of the possible issuance of such notice of deficiency, various former subsidiaries of Premier (including Globe) entered into a "sharing agreement" providing for the then remaining solvent members of the Premier Group to "share" the expenses of contesting possible deficiencies against the group and, in the event the Government should be successful in the assertion of any deficiency, to share the payment of any tax liabilities and interest determined to be owed by the Premier Group. Premier also joined in the sharing agreement for the purpose of authorizing the other parties to prosecute a contest of the proposed deficiency. Subsequently, on April 29, 1970, Premier (for itself and its subsidiaries) filed a petition in the United States Tax Court seeking a redetermination of the proposed deficiency. The expenses and fees incurred in this proceeding were paid by the parties to the sharing agreement. Premier and the Internal Revenue Service thereafter agreed to a deficiency in an amount smaller than proposed in the Premier Group notice of deficiency, and pursuant to a stipulation, a decision of the United States Tax Court was entered on August 1, 1972, finding no deficiency for 1959 or 1960, a deficiency for 1961 of $15,970.56,[2] and a deficiency for 1962 of $942,840.23, plus interest on both deficiencies as provided by law.

At the close of the year 1972, the total deficiencies and then accrued interest outstanding against the Premier Group were as follows:

---

[1] A number of relatively small adjustments relating to individual corporations in the Premier Group also were proposed.

[2] There is an unexplained discrepancy in respect of the deficiency for 1961 between the $15,970.56 stipulated amount that appears in this paragraph and the $15,907.56 stipulated amount that appears in the table in the following paragraph.

| Year | Tax | Accrued interest | Total |
|------|-----|------------------|-------|
| 1961 | [3]$15,907.56 | $10,313.33 | $26,220.89 |
| 1962 | 942,840.23 | 554,700.03 | 1,497,540.26 |
| | | | 1,523,761.15 |

Under the terms of the sharing agreement, Globe's responsibility for the total liability outstanding against the Premier Group was 12.943 percent, or $197,227.[4]

Globe's 12.943-percent share of the liability for the deficiencies and interest under the sharing agreement was substantially greater than Globe's percentage share of the total consolidated taxable income of the Premier Group in each of the years 1961 and 1962, computed by using the income figures determined in the Premier Group notice of deficiency, as follows:

| Year | Corrected Globe income | Corrected Premier Group consolidated taxable income | Globe's percentage of Premier Group consolidated taxable income |
|------|-----------------------|----------------------------------------------------|----------------------------------------------------------------|
| 1961 | $95,607.14 | $6,814,700.09 | 1.40295% |
| 1962 | 32,558.38 | 1,981,690.63 | 1.64295% |

The consolidated return regulations (sec. 1.1502–15A(a) and (c), Income Tax Regs.) promulgated under the authority of section 1502 of the Internal Revenue Code, as in effect for the years 1961 and 1962, provide that both the common parent and each subsidiary which was a member of the group during any part of the consolidated year shall be severally liable for the tax for such year computed in accordance with the regulations. Even the withdrawal of a subsidiary from the consolidated group will not affect its liability.

On June 8, 1973, a written request was made by counsel for the parties to the sharing agreement to the Office of the District Director, Manhattan, N.Y., that counsel be furnished with a copy of the Certificate of Assessments and Payments for 1961 and 1962 with respect to the Premier Group's tax liabilities. Since no such certificate was apparently provided in response to that

---

[3] See n. 2.

[4] The percentage share and the $197,227 figure were stipulated by the parties. However, there is an approximate $7 unexplained discrepancy between the $197,227 figure and the figure which results from multiplying the aggregate liability as of the end of 1972 by the stipulated percentage share applicable to Globe.

request, another written request was made by counsel for a Certificate of Assessments and Payments, and on August 28, 1973, the requested certificate was furnished. It was there disclosed that 1961 and 1962 deficiencies had been assessed in the name of, and only in the name of, "Premier Corporation of America and Subsidiaries." The certificate also disclosed that on or about October 2, 1972, a notice and demand for payment had been sent to Premier at its last known Manhattan address in New York, N.Y. No assessment directly in the name of "Globe" was ever made against it with respect to the Premier Group's tax liabilities and the statute of limitations for making any new assessment for taxes for 1961 and 1962 had run prior to the June 8, 1973, written inquiry referred to above. Following its receipt of information that the assessment for the 1961 and 1962 deficiencies had been made in the name of "Premier Corporation of America and Subsidiaries," Globe, together with certain former subsidiaries of Premier, commenced a contest of the assessment with the Internal Revenue Service on the ground that the assessment failed to comply with the provisions of section 1.1502–16A(a), Income Tax Regs. That regulation provides in part that any assessment of a deficiency for a consolidated return period "will be made" in the name of "each" corporation which was a member of the affiliated group during the period.

On July 30, 1974, the Internal Revenue Service served a notice and demand on Globe in the amount of $1,714,840.86, the full amount originally assessed against "Premier Corporation and Subsidiaries" plus interest.[5] This document specifically named Globe. On August 5, 1974, another notice and demand was served on Globe, which provided for seizure of Globe's property if the full amount were not paid within 10 days. Similar notices and demands were made against other members of the former Premier Group.

On or about August 6, 1974, Globe commenced an action in the United States District Court for the District of Maryland for preliminary and permanent injunctive relief against collection of the asserted tax, interest, and penalty, and for an order to quiet the title to its property. This action was assigned to Judge

---

[5]The Premier account had been marked delinquent by the Internal Revenue Service on Mar. 19, 1973.

Joseph H. Young and was docketed as Civil No. Y-74-842. On or about August 7, 1974, the court entered a temporary restraining order. On November 26, 1974, the court granted the Government's motion for summary judgment and denied Globe's application for injunction, relying in part on the anti-injunction provisions of section 7421, I.R.C. 1954. Judge Young did not reach the merits of Globe's claim under section 1.1502-16A(a), Income Tax Regs.[6] On December 3, 1974, Globe filed a motion requesting the court to vacate and/or reconsider the judgment entered on November 26, 1974. In January 1977, this proceeding was dismissed by the United States District Court pursuant to stipulation of the parties. Similar actions were commenced by other former members of the Premier Group in other jurisdictions.

On December 11, 1974, Globe, together with certain other former Premier subsidiaries collectively made payment to the Internal Revenue Service in the aggregate sum of $30,123.51 representing the asserted total liability (including tax, interest, and penalty thereon) for 1961. On December 13, 1974, Globe and the other Premier subsidiaries filed with the Internal Revenue Service associated claims for refund of the 1961 asserted tax, interest, and penalty of $30,123.51, and on August 1, 1975, a refund action was commenced in the United States District Court for the Southern District of New York seeking recovery of the 1961 asserted tax, interest, and penalty of $30,123.51 paid on December 11, 1974. The United States filed counterclaims in each of these proceedings for the liability claimed under the 1962 Premier assessment.

On May 22, 1978, the refund suits for the year 1961 and the outstanding liabilities for the year 1962 were settled by Globe and the other Premier subsidiaries pursuant to a "compromise" agreement with the United States, under which Globe was required to pay the following:

---

[6]In his opinion, Judge Young made various findings concerning the procedural history of the case. In particular, he found that no copy of the Oct. 2, 1972, notice and demand for payment that was sent to Premier was forwarded to Globe.

| Share of 1961 tax liability of Premier Group paid by Globe: | |
|---|---|
| Tax | $2,036.21 |
| Interest | 1,565.27 |
| Total | [7]3,628.48 |

| Share of 1962[8] tax liability of Premier Group paid by Globe: | |
|---|---|
| Tax | $146,998.89 |
| Interest | 59,210.97 |
| Total | 206,209.86 |

The payments applicable to the 1961 tax and interest were made by Globe on December 11, 1974. The payments applicable to the 1962[9] tax and interest were made by Globe on May 22, 1978.

On its Federal income tax return for 1972, Globe claimed a deduction in the amount of $197,227 for a "guarantee payment." This amount corresponds to Globe's share under the terms of the "sharing agreement" between Globe and other former Premier subsidiaries of the liabilities determined by the August 1, 1972, stipulated Tax Court decision, with interest, calculated as of the end of 1972. Globe's 1972 return (dated October 11, 1973, and stamped received on October 12, 1973) explained the deduction as follows:

Note: This item is claimed as a deduction for the taxable year 1972 on the ground that at the close of such year it appeared that all events necessary to fix the liability had occurred. Subsequently, events occurred which make it appear that the taxpayer has no liability for the amount but the question of liability is likely to be the subject of litigation. See Section 111, I.R.C.

The Commissioner determined that, regardless of accounting principles, the claimed deduction was improper to the extent that it represented a nondeductible liability for Federal income taxes; and he determined further that no deduction whatever was allowable since, as of the end of 1972, Globe, an accrual basis taxpayer, was still contesting the validity of the liability which formed the basis of the deduction. We hold that Globe is not

---

[7]The $3,628.48 total was stipulated by the parties. However, there is an unexplained $27 discrepancy between the stipulated total and the sum of the stipulated 1961 tax and interest payments.

[8]Apparently as the result of a typographical error, the stipulation of facts refers to this date as "1961." Respondent's proposed findings of fact uses the "1962" date, and petitioner has not objected to such proposed finding.

[9]The same situation exists with respect to this 1962 date as described in n. 8.

entitled to a deduction in 1972 for that portion of the $197,227 liability which we find to be allocable to income taxes of the Premier Group, but that it is entitled to accrue and deduct the remaining portion thereof allocable to interest on the unpaid income tax deficiency.

The Commissioner has conceded that a portion of the $197,227 amount accrued by Globe in 1972 represents interest on the Premier Group deficiency. As of the end of 1972, the Premier Group owed $565,013.36 in accrued interest. Globe's agreed-upon share of this liability under the terms of the sharing agreement was 12.943 percent. Accordingly, $73,129.68 of the $197,227 amount deducted by Globe represents interest owed by Globe on the deficiency. A sharp controversy has developed between the parties as to the proper characterization of the remaining $124,097.32 ($197,227 minus $73,129.68), which the Government contends is an income tax liability, the deductibility of which is barred by section 275.[10] We first consider the deductibility of this $124,097.32 component.

(1) In arguing that its deduction of the $124,097.32 noninterest portion of the $197,227 liability is not precluded by section 275, petitioner contends that "Federal income tax" is defined by section 11 to be a percentage of a corporation's taxable income. Since petitioner's liability under the sharing agreement was based on the consolidated taxable income of the Premier Group rather than on Globe's taxable income, petitioner concludes that the liability (at least to the extent that it exceeds a tax measured by the statutory rate of taxation applied to its own separate taxable income) is not a Federal income tax. We disagree. Petitioner ignores the effect of sections 1501, 1502, and 1503 of the Code and the consolidated return regulations, sections 1.1502–0A through 1.1502–51A, Income Tax Regs., applicable to taxable years beginning before January 1, 1966.[11] Under these provisions, Globe consented to become taxable on the consolidated taxable income of the Premier Group, and it was severally liable for payment of the entire tax so calculated.

Section 1501 provides that an affiliated group of corporations shall have the privilege of making a consolidated return, and

---

[10]SEC. 275. CERTAIN TAXES.

(a) GENERAL RULE.—No deduction shall be allowed for the following taxes:

(1) Federal income taxes * * *

[11]See sec. 1.1502–0(b), Income Tax Regs.

that the making of such return shall be upon the condition that all members of the affiliated group consent to the consolidated return regulations promulgated under the express authority of section 1502. See sec. 1.1502–1A(a), Income Tax Regs. Section 1503 provides that in any case in which a consolidated return is made, "the tax shall be determined, computed, assessed, collected, and adjusted in accordance with" the section 1502 regulations. Section 1.1502–30A(a), Income Tax Regs., states that "the tax liability of *each* corporation" a party to a consolidated return shall be computed "upon the consolidated taxable income" as defined by the regulations. "Consolidated taxable income" is the combined taxable income of the several affiliated corporations, subject to certain adjustments. Sec. 1.1502–31A(a), Income Tax Regs. Under section 1.1502–15A(a), Income Tax Regs., the common parent and each subsidiary are severally liable for the tax computed under section 1.1502–30A, Income Tax Regs.

The net effect of section 1503 of the Code and sections 1.1502–30A and 1.1502–15A(a), Income Tax Regs., is to impose a tax on Globe based not on its own taxable income, but rather upon consolidated taxable income.[12] In accordance with section 1501 of the Code, Globe is deemed to have consented to this tax by having filed a consolidated return. Under the regulations, the tax was *Globe's* liability. We therefore conclude that petitioner's liability represented a nondeductible obligation for Federal income taxes within the intendment of section 275.

We note that petitioner's status as a party to a consolidated return is analogous to that of a married individual who elects to file a joint return, thereby making himself jointly and severally liable for the entire amount of the tax imposed on the aggregate income of the husband and wife. See sec. 6013(d)(3). If the tax is collected entirely from one spouse, section 275 bars deduction of any portion of the payment. See *Rude v. Commissioner*, 48 T.C. 165, 174–175 (1967). The same result obtains here.

We are unpersuaded by petitioner's contention that Globe's liability cannot represent a Federal income tax because the liability arose from a sharing agreement with other Premier

---

[12]Petitioner cites secs. 1.1502–31A(b) and 1.1552–1, Income Tax Regs., for the proposition that each member of the affiliated group is required to compute its separate return taxable income, and to apportion its share of the total consolidated tax liability for earnings and profits purposes. However, these regulations in no way restrict imposition of tax against each affiliate to the tax due on the affiliate's separate return taxable income.

subsidiaries. Under the consolidated return regulations, Globe was potentially responsible for the entire amount of the Premier Group income tax deficiency. The primary effect of the sharing agreement was to protect Globe in its relations inter sese with the other signatories to the agreement from having to bear the burden of the entire tax obligation. The sharing agreement did not alter its liability to the United States, nor did it affect the character of that underlying obligation. Cf. *Edwin J. Schoettle Co. v. Commissioner*, 3 T.C. 712, 718 (1944), affd. per curiam 147 F.2d 549 (3d Cir. 1945) (payment of judgment on bond given by taxpayer in abatement proceedings to secure payment of additional tax liability).

Petitioner next claims that it is entitled to a bad debt deduction under section 166 for the worthlessness of an alleged right of reimbursement it possessed against the insolvent Premier Group subsidiaries in respect of the Premier Group income tax liability. According to petitioner, this right arose from Globe's undertaking to pay the insolvent subsidiaries' share of the income tax liabilities outstanding against the Premier Group. This argument is without merit.

Petitioner offered no evidence of the existence of any contractual right of reimbursement. Moreover, even if Globe did possess such a contractual right, or a right of contribution under general principles of law (cf. *Koppers Co. v. Commissioner*, 8 T.C. 886, 890–891 (1947), supplemental opinion 11 T.C. 894, 901–903 (1948)), no bad debt deduction would be available. Petitioner cannot invoke section 166 to circumvent the clear prohibition of section 275 against the deduction of Federal income taxes.

In *Rude v. Commissioner*, 48 T.C. 165, 174–175 (1967), the taxpayer filed a joint return with her husband in 1951. The Court found that she possessed a statutory and contractual right of contribution against her husband for half of a Federal income tax due for that year. We further held that she was not entitled to a bad debt deduction for the worthlessness of this right (48 T.C. at 175)[13]

A husband and wife have the option of filing a joint return. In return for this privilege section 6013 imposes joint and several liability on them. As a result, the petitioner had an absolute liability for the entire additional

---

[13]Accord, *Haynes v. Commissioner*, 27 T.C.M. 1531, 37 P–H Memo T.C. par. 68,287 (1968).

assessment made with respect to 1951 income taxes. We see no reason to permit her to avoid this obligation of several liability by claiming the worthlessness of a contractual and statutory right of contribution from [her husband] as a joint obligor. * * * Having elected to file a joint return, the petitioner must accept all consequences of the election, viz, the duty to pay the full amount of the tax due. In our judgment she is not entitled to a deduction which would, either directly or indirectly, reduce the * * * [tax] which she clearly owes.

Petitioner cannot invoke section 166(d) to circumvent the prohibition of a deduction under section 164(b)(1) [predecessor to section 275] * * * . Since the petitioner was not entitled under any circumstances to a deduction for the Federal income taxes she paid, we think she cannot deduct part of them merely because her husband could not pay his share.

Petitioner is in the same position. It elected to file a consolidated return, and this election made it severally liable for the Premier Group income tax deficiency. Globe may not convert a nondeductible tax liability into a deduction by virtue of the worthlessness of a right of contribution.

Since we hold that the noninterest portion of the sharing agreement liability is nondeductible by reason of section 275, we need not consider whether it could otherwise qualify as an ordinary and necessary business expense under section 162.

(2) We have found that $73,129.68 of the amount deducted by petitioner in 1972 represents interest on the Premier Group deficiency through the end of 1972. Petitioner contends that this amount properly was accrued as an interest deduction in 1972. The Commissioner, on the other hand, argues that the accrual was improper since Globe denied its liability with respect to the claimed deduction by challenging the legality of the assessment of the tax and interest based on facts that existed at the end of 1972. We agree with petitioner.

When the accrual method of accounting is used, deductions are generally allowable in the year in which all events occur which determine the fact of liability and fix the amount thereof with reasonable accuracy. Sec. 1.461–1(a)(2), Income Tax Regs.; *United States v. Anderson*, 269 U.S. 422 (1926). The "all events" test may be satisfied before the liability actually becomes due or is paid. See, e.g., *United States v. Anderson, supra* at 441. However, if a taxpayer contests or denies his liability during a taxable year, there is no proper accrual until the liability is finally established. See, e.g., *Security Flour Mills Co. v. Commissioner*, 321 U.S. 281 (1944); *Dixie Pine Products Co. v. Commissioner*, 320 U.S. 516 (1944). When a deductible liability becomes

contested in a year subsequent to the year in which the taxpayer accrued the deduction, the propriety of accrual in the earlier year "must be judged by the facts which petitioner knew or could reasonably be expected to know at the closing of its books for the taxable year." See *Baltimore Transfer Co. v. Commissioner*, 8 T.C. 1, 7 (1947). Thus, the "all events" test is to some extent subject to a reasonableness standard. Cf. generally *Helvering v. Russian Finance & Construction Corp.*, 77 F.2d 324, 327 (2d Cir. 1935); *Stamos v. Commissioner*, 22 T.C. 885, 892–893 (1954); *Kenyon Instrument Co. v. Commissioner*, 16 T.C. 732, 738–739 (1951).

The contest concerning Globe's liability for the interest on the Premier Group tax deficiencies arose from the Commissioner's failure to assess the tax and interest in the name of "Globe," as required by section 1.1502–16A(a), Income Tax Regs., before the expiration of the statute of limitations for making assessments. The existence of liability for interest on the deficiencies was established by a stipulated decision of the Tax Court entered on August 1, 1972, in settlement of the Premier Group tax litigation. The deficiencies and interest were assessed against "Premier Corporation of America and Subsidiaries" in 1972, and a notice and demand for payment was sent to Premier (the parent corporation) at its last known address in October 1972. However, no copy of this notice and demand was forwarded to Globe. It was not until August 28, 1973, after two written requests by Globe's counsel, that Globe received a copy of the Certificate of Assessments and Payments showing that the tax and interest was not assessed in the name of Globe. Globe *thereafter* commenced a challenge of the assessment.[14]

Under the rule of *Baltimore Transfer Co. v. Commissioner, supra,* petitioner is entitled to accrue the interest deduction in 1972. Although the record is not entirely clear, we are satisfied that in 1972 Globe did not know, and could not reasonably have

---

[14] The situation in this case is thus to be sharply contrasted with the one in *Boston Elevated Railway Co. v. Commissioner*, 16 T.C. 1084, 1105–1106 (1951), affd. 196 F.2d 923 (1st Cir. 1952), involving an item of income otherwise accruable in 1941 that was held not to be accruable in that year where litigation in respect thereof was not commenced until 1942 but where significant steps short of litigation had been taken in 1941 and where the controversy was shown to have "reached a high pitch as of" the end of 1941. In the instant case, on the other hand, there was outstanding as of the end of 1972 a final decision of the Tax Court (entered Aug. 1, 1972) which formed the basis for fixing petitioner's liability, and on Dec. 31, 1972, there was no controversy with respect to such liability of petitioner. The controversy that ultimately ensued did not develop until after counsel had received the Certificate of Assessments on Aug. 28, 1973.

been expected to know, that the interest it owed was assessed in a manner arguably contrary to the regulations. There is no indication in the record that Globe received any communication from the Commissioner concerning the assessment until August 1973. Globe or its representatives agreed to the settlement of the Premier Group tax deficiency by entry of a stipulated Tax Court decision in 1972. The Tax Court decision became final in 1972, which fixed Globe's liability for interest. Accrual of the deduction ordinarily would be appropriate at that time. See *Commissioner v. Fifth Avenue Coach Lines, Inc.*, 281 F.2d 556, 558–560 (2d Cir. 1960), cert. denied 366 U.S. 964 (1961), revg. 31 T.C. 1080 (1959); cf. *Seiberling Rubber Co. v. United States*, 156 Ct. Cl. 219, 297 F.2d 842, 845–846 (1962), cert. dismissed 371 U.S. 801 (1962). The subsequent allegedly invalid assessment was in the nature of an administrative or clerical error, and there is no reason why Globe should have anticipated the error or doubted its liability so soon after the Premier Group Tax Court case was settled. To be sure, section 1.461–1(a)(3), Income Tax Regs., requires a taxpayer to ascertain the facts necessary to make a correct return. We think that this regulation does not, however, place unreasonable burdens on taxpayers to inquire about every clerical or administrative matter that might conceivably affect the collection of an otherwise properly accrued liability. Since Globe was not on notice of any clerical or administrative irregularity, it reasonably was entitled to assume that the interest would be assessed free from clerical error and collected in the normal manner.

Finally, the Commissioner asks us to disallow any interest deduction for 1972 greater than the amount ultimately paid by Globe in satisfaction of its interest liability in 1978. This disallowance is improper. The accrual method of accounting does not permit retroactive adjustments for developments subsequent to the close of the tax year when the accrual is otherwise correct. See, e.g., *Bartlett v. Delaney*, 173 F.2d 535 (1st Cir. 1949), cert. denied 338 U.S. 817 (1949); *Harbor Building Trust v. Commissioner*, 16 T.C. 1321, 1333–1334 (1951), appeal dismissed (1st Cir., Feb. 27, 1953); *Taylor Instrument Cos. v. Commission-*

er, 14 T.C. 388, 389–390 (1950).[15] Petitioner may deduct $73,129.68 as interest for the year 1972.

*Decision will be entered under Rule 155.*

---

[15]The conclusion that we reach herein does not mean that the Commissioner is necessarily without a remedy. It would seem that an appropriate adjustment could be made in respect of Globe's 1978 taxable income by use of the "tax benefit rule" or some comparable principle to reflect the fact that Globe's interest liability was settled in 1978 for an amount smaller than that accrued and deducted as of the close of 1972. However, that matter is not before us here, and we express no opinion thereon.